**Roosevelt RUNNELS, Plaintiff-Appellant,**

v.

**David ROSENDALE, M. D., and Roland P. Young, M. D., Defendants-Appellees.**

No. 72–1067.

United States Court of Appeals,
Ninth Circuit.

June 21, 1974.

John D. Brophy, Sacramento, Cal., for plaintiff-appellant.

Edward W. Bergtholdt, Deputy Atty. Gen., Garrick W. Chock, Sacramento, Cal., for defendants-appellees.

## OPINION

Before BROWNING and ELY, Circuit Judges, and TAYLOR,* District Judge.

BROWNING, Circuit Judge:

Roosevelt Runnels, an inmate of Folsom State Prison, brought this action under 42 U.S.C. § 1983 against two prison medical officials, Dr. Rosendale and Dr. Young, alleging they conducted a hemorrhoidectomy upon his person without his consent and denied him necessary analgesics for a period of five days after the operation, causing him intense and agonizing pain.

Defendants-appellees moved to dismiss for failure to state a claim. They also sought summary judgment on the basis of affidavits tending to show that plaintiff-appellant had signed a written consent to the operation, but that it had been removed from the prison file without authority. Plaintiff-appellant relied upon the verified allegation of his complaint that he "had vigorously and repeatedly refused to give his consent to such an operation."

The court recognized that a substantial question of fact was presented on the issue of consent, barring summary disposition on this ground.[1] Nonetheless, the court granted summary judgment for both defendants-appellees. Relying on such cases as Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969), the court concluded that "[t]o state a claim under the Civil Rights Act for failing to supply medical treatment or for improperly providing medical treatment, a plaintiff must allege facts which shock the conscience or constitute some barbarous act," and held that the conduct of Dr. Young, the attending surgeon, reflected in the complaint and affidavit, did not rise to this level. Summary judgment was granted in favor of Dr. Rosendale, chief medical officer, on the ground that he was charged only with supervision of Dr. Young, and personal involvement in the facts alleged was required for liability under the Civil Rights Act, citing Runnels v. Parker, 263 F.Supp. 271 (C.D.Cal.1967).

Since the court's decision did not rest upon the affidavits, but rather upon the conclusion that the allegations of the complaint did not state a claim under 42 U.S.C. § 1983, it was "functionally the same" as an order granting a motion to dismiss for failure to state a claim, and

---

* Honorable Fred M. Taylor, Senior United States District Judge, District of Idaho, sitting by designation.

1. Rule 56(e), Fed.R.Civ.P., provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

If a complaint is verified, however, as it was in this case, it can be considered as equivalent to an affidavit to the extent that it meets the requirements for affidavits set out in Rule 56(e). 6 Moore's Federal Practice § 56.11(3), at 2176–77; see Khan v. Garanzini, 411 F.2d 210, 212 (6th Cir. 1969). The allegations of this complaint relating to the absence of consent were specific and clearly based on matters within the personal knowledge of the plaintiff, to which he was competent to testify. As to this issue, therefore, the trial judge properly treated the verified complaint as equivalent to a 56(e) affidavit.

must be reviewed as such. 6 Moore's Federal Practice § 56.02(3), at 2035. Thus, the question is whether "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See* Wiltsie v. California Department of Corrections, 406 F.2d 515, 517 (9th Cir. 1969).

The court below analogized this case to those involving mere differences in opinion between the prisoner and prison medical officials over the proper course of treatment, or allegations of simple malpractice, neither of which is sufficient to state a cause of action under 42 U.S.C. § 1983. Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970). But the allegations of this complaint suggest conduct of a different order.

Allegations that prison medical personnel performed major surgical procedures upon the body of an inmate, without his consent and over his known objections, that were not required to preserve his life or further a compelling interest of imprisonment or prison security, may foreshadow proof of conduct violative of rights under the Fourteenth Amendment sufficient to justify judgment under the Civil Rights Act. Although we have found no case directly in point,[2] this principle may emerge from at least two relevant lines of authority.

■ A constitutionally protected right to be secure in the privacy of one's own body against invasion by the state except where necessary to support a compelling state interest has been recognized. Roe v. Wade, 410 U.S. 113, 153–156, 93 . S.Ct. 705, 35 L.Ed.2d 147 (1973). This right may be violated by prison medical personnel in the course of treatment of a prison inmate. Mackey v. Procunier, 477 F.2d 877, 878 (9th Cir.

1973). *See also* Winters v. Miller, 446 F.2d 65 (2d Cir. 1971).

■ A second line of authority has recognized a constitutional right to be free of unprovoked physical assault by agents of the state while in state custody. Brown v. Brown, 368 F.2d 992 (9th Cir. 1966); Wiltsie v. California Department of Corrections, *supra,* 406 F.2d 515; Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969). *See also* Johnson v. Glick, 481 F.2d 1028, 1032–1033 (2d Cir. 1973). Because of a prisoner's peculiar dependence and vulnerability in respect to medical treatment (*see* Fitzke v. Shappell, 468 F.2d 1072, 1076 (6th Cir. 1972), quoted *infra*), the right to be secure in one's person could be violated by the substantial threat to physical security necessarily involved in major surgery, when such surgery is neither consented to nor required for purposes of imprisonment or security.

■ Without attempting to define the limits of the constitutional right more precisely, the possibility that plaintiff-appellant may prove an intentional, unwarranted invasion of his limited rights of personal security and privacy entitling him to relief under these authorities is certainly not so clearly precluded as to justify dismissal of the complaint for failure to allege a cause of action. Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14, 453 F.2d 1018, 1025 (9th Cir. 1972); Harman v. Valley National Bank, 339 F.2d 564 (9th Cir. 1964); Corsican Productions v. Pitchess, 338 F. 2d 441, 443 (9th Cir. 1964).

Similarly, the allegations that plaintiff-appellant was left in severe pain for an extended period of time without necessary and available analgesic relief were sufficient to survive a motion to dismiss for failure to state a cause of action under 42 U.S.C. § 1983.

---

2. The district court relied upon Owens v. Alldridge, 311 F.Supp. 667 (W.D.Okl.1970), but that case appears to have involved a medical emergency. There is no indication that the plaintiff expressly withheld consent. In such a situation, consent might be implied.

Reading the *pro se* complaint with the required generosity (Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)), we think that plaintiff-appellant may be alleging he was deliberately caused to suffer intense and agonizing pain through failure to provide him with necessary pain-killers for relief of foreseeable post-operative discomfort. There is no legally significant distinction between the deliberate infliction of pain through a calculated withholding of medication and an unprovoked assault. Johnson v. Glick, *supra*, 481 F.2d at 1031. Further, for reasons suggested in Fitzke v. Shappell, *supra*, 468 F.2d at 1076, failure to provide a prisoner with required medical care, even without an intent to cause pain, may violate his constitutional rights.[3] In extreme circumstances, an unjustified refusal to provide required medication in the course of treatment may constitute such a violation. Tolbert v. Eyman, *supra*, 434 F.2d 625.

We need not decide whether liability under the Civil Rights Act may be based upon the principle of *respondeat superior*. The complaint contains general allegations that both Dr. Rosendale and Dr. Young participated "in all matters leading up to and including the wanton, willful, and malicious performing of the operations upon the body and person of the plaintiff," and acted "with the full knowledge on the part of the defendants that *they* were exceeding *their* authority" (emphasis added). These allegations may be read as charging personal participation by Dr. Rosendale. Defendants-appellees' affidavits do not attempt to establish that Dr. Rosendale's role was limited to supervision; the affidavits simply do not address this issue.

Reversed.

---

3. In Fitzke v. Shappell, 468 F.2d 1072, 1076 (6th Cir. 1972), the court said:

"The logic of these pronouncements is not difficult to perceive. An individual incarcerated, whether for a term of life for the commission of some heinous crime, or merely for the night to 'dry out' in the local drunk tank, becomes both vulnerable *and* dependent upon the state to provide certain simple and basic human needs. Examples are food, shelter, and sanitation. Facilities may be primitive but they must be adequate. Medical care is another such need. Denial of necessary medical attention may well result in disabilities beyond that contemplated by the incarceration itself. The result may be crippling injury, as alleged here, or, as the *Stiltner* [Stiltner v. Rhay, 9 Cir., 371 F.2d 420] court pointed out, the very deprivation of life itself, since, *restrained by the authority of the state*, the individual cannot himself seek medical aid or provide the other necessities for sustaining life and health.

Thus it is that fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury. This is not to say that every request for medical attention must be heeded nor that courts are to engage in a process of second-guessing in every case the adequacy of medical care that the state provides. But where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process" (emphasis in original).