527 F.2d 1041
 James RHEM et al., Plaintiffs-Appellees,
v.
Benjamin J. MALCOLM, Commissioner of Correction for the City
of New York, et al., Defendants-Appellants,
Peter Preiser, Commissioner of Correction of the State of
New York et al., Defendants.
James BENJAMIN et al., Plaintiffs-Appellees,
v.
Benjamin J. MALCOLM, Commissioner of Correction of the City
of New York, et al., Defendants-Appellants.
 Nos. 361, 475, Dockets 75--2098, 75--2104.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1975.
Decided Dec. 5, 1975.
 
 Mark D. Lefkowitz, New York City (W. Bernard Richland, Corp. Counsel, New York City, L. Kevin Sheridan, Donald J. Tobias, New York City, of counsel), for defendants-appellants.
 Joel Berger, New York City (William E. Hellerstein, Steven A. Herman, The Legal Aid Society, Prisoners' Rights Project, New York City, of counsel), for plaintiffs-appellees.
 Before MANSFIELD, TIMBERS and GURFEIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 In 1970 pretrial detainees commenced a civil rights class action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of conditions at the Manhattan House of Detention, commonly called the 'Tombs.' After a lengthy trial in the Southern District of New York before Judge Morris E. Lasker, sitting without a jury, the district court on January 7, 1974, ruled that various conditions and practices at the institution violated the demands of due process and equal protection. Rhem v. Malcolm, 371 F.Supp. 594 (S.D.N.Y.), affd., 507 F.2d 333 (2d Cir. 1974). Included among the practices expressly condemned by the court were two which are the subjects of this appeal: (1) the denial of contact visits (i.e., physical contact between prisoner and visitor), which were precluded by placing detainees in enclosed visiting booths, see id. at 625--26, and (2) the nonavailability of an optional 'lock-in' program whereby detainees can elect to remain in their cells during normal 'lock-out' periods, see id. at 628.
 
 
 2
 In March 1974, the district court ordered the city defendants[1] to submit a plan to correct the objectionable practices. After some delay, the defendants expressly refused to submit the required plan. Consequently, pending compliance, Judge Lasker on July 11, 1974, enjoined further confinement at the Tombs after August 10, 1974. See 377 F.Supp. 995 (S.D.N.Y.1974). The city appealed and this court unanimously affirmed the district court's findings of fact and conclusions of law, while remanding the case to the district court for further consideration of the appropriate remedy. See 507 F.2d 333 (2d Cir. 1974).
 
 
 3
 The city thereupon decided to close the Tombs and to transfer its detainees to the House of Detention for Men on Rikers Island (HDM). Accordingly, the remaining members of Rhem's plaintiff class requested that the relief previously granted them while incarcerated in the Tombs similarly should apply to their detention at HDM. Rejecting the city's contention that the change in institution should necessitate full discovery and a trial de novo, the court on February 20, 1975, ordered that appropriate steps be taken to comply with its previous rulings. See 389 F.Supp. 964 (S.D.N.Y.1975). Of particular relevance to this appeal, following several days of relief hearings in January 1975 and a visit to the facility, Judge Lasker's judgment, 70 Civ. 3962, ordered (1) that within 90 days of entry of judgment all personal visits accorded plaintiffs should be contact visits except in instances when an established classification system indicated that institutional security would be jeopardized by such a visit and an application to the court for denial of such a visit had been made, and (2) that within 60 days of entry of judgment HDM must institute an experimental program of optional lock-in in two cell blocks selected by the warden, reporting the results of the experiment to the court, which would then determine whether the program should be expanded, eliminated, or tested further.[2]
 
 
 4
 Shortly thereafter the inmates at HDM who were not transferees from the Tombs initiated their own class action, Benjamin v. Malcolm, 75 Civ. 3073, essentially requesting that the relief granted to the Rhem class should be made available to all detainees at the facility. In a memorandum and order dated July 11, 1975, Judge Lasker granted their request for the same preliminary relief, including that pertaining to the contact visits and optional lock-in. The relief, however, was stayed pending appeal to this court. Thereafter we granted defendants' motion to consolidate the appeals in Rhem and Benjamin.
 
 DISCUSSION
 
 5
 We find no merit in appellants' initial contention that the court erred in ordering HDM to provide contact visits for all detainees without first holding a full hearing on the physical and financial difficulties posed by such an order. The argument ignores the fact that Judge Lasker held just such a series of hearings in January 1975 following this court's first remand. The city had the opportunity to air its financial and administrative concerns during those deliberations. Moreover, in granting the relief on February 20, 1975, the district court was not writing on a clean slate. Judge Lasker's order requiring the abolition of noncontact booth visits at HDM, subject to the legitimate dictates of institutional security, merely reflected the fact that such visits previously had been held to be an unconstitutional practice, 371 F.Supp. at 625, affd., 507 F.2d at 338--39, and one that already has been discontinued by most penal authorities.[3] An unconstitutional booth is no less objectionable because it sits on Rikers Island rather than in the Tombs.
 
 
 6
 Similarly, the appropriateness of the experimental optional lock-in program, which is challenged by appellants' second argument, is no longer open to question. From the first, the court made clear that an optional lock-in program is constitutionally mandated, see 371 F.Supp. at 628, affd., 507 F.2d at 339, and indicated that the remedy 'may require experimentation before an effective plan can be developed . . ..' Id. Rather than representing an unwarranted interference with the administration of HDM, as appellants maintain, the court's order, in requiring the warden to determine the initial scope of the lock-in program, constitutes a sensible attempt to draw upon the expertise and cooperation of the prison officials in resolving the constitutional defect.
 
 
 7
 We are not unaware of the financial difficulties presently confronting the city defendants.[4] But the need to bear this particular financial burden hardly comes as a surprise to the penal authorities, who have been fighting losing battles in this litigation for almost five years.[5] More importantly, an individual's constitutional rights may not be sacrificed on the ground that the city has other and more pressing priorities. See Rhem v. Malcolm, 507 F.2d at 341--42; Detainees of Brooklyn House of Detention v. Malcolm, 520 F.2d 392, 399 (2d Cir. 1975). To do so would be to discriminate grievously against poor persons who cannot afford bail. Presumed innocent in the eyes of the law, they are incarcerated solely to insure their appearance at subsequent proceedings. This limited deprivation of their liberty cannot be extended to justify the denial of other unrelated rights for budgetary reasons. See Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Denial of the presumptively innocent detainee's constitutional rights represents an impermissible price to pay for his retention in custody. fn4 It perhaps should be mentioned that it is not at all clear from the record that instituting these contested reforms will be an unduly expensive proposition. For example, the New York City Board of Estimate and City Council apparently have already approved a capital expenditure of $200,000 in order to construct the necessary contact visit facilities at HDM. And the administrative problems associated with the optional lock-in program seem more a matter of inconvenience than sizeable expense, see 389 F.Supp. at 969, since a guard charged with bringing a 'locked-in' inmate to the medical facilities, visitors rooms, etc. will simply have to walk to his cell rather than to locate the detainee among the central 'lockout' areas. Judge Lasker noted that even this inconvenience factor can largely be obviated by informing an inmate that his decision to remain in his cell waives his right to participate in normal activities in the public parts of the cell block. Id.
 
 
 
 [1]
 The defendants actually include representatives of both the city and state governments: Benjamin J. Malcolm, Commissioner of Correction for New York City; Arthur Rubin, Warden, Manhattan House of Detention for Men; Abraham Beame, Mayor, New York City; Peter Preiser, Commissioner of Correction of the State of New York; Hugh Carey, Governor of the State of New York; and Owen McGivern, Presiding Justice, New York State Supreme Court, Appellate Division, First Department. Only the city officials are serving as appellants, however
 
 
 [2]
 The requirement that the defendants apply to the court for permission to deny contact visits was later stricken by the district court's Memorandum Decision and Amended Judgment dated April 23, 1975. At the same time the district court modified the optional lock-in provisions to give the warden the option of implementing the optional lock-in program throughout the entire facility
 
 
 [3]
 For example, it was established at the initial trial, see 371 F.Supp. at 603, that all detainees at the Federal House of Detention in New York City are afforded contact visits, as are all convicted prisoners in New York State adult correctional facilities
 
 
 [5]
 This court noted during the first appeal: 'One does not get the impression from the record of defendants straining in every way to comply with the district court's directions,' and proceeded to label the city's conduct as 'foot dragging.' 507 F.2d at 341. Moreover, in returning the case to the district court, the court cautioned: 'Four years after ugly riots caused by conditions at the Tombs, the time has come to end this litigation.' Id. at 341. More recent events reconfirm this foreboding. N.Y. Times, Nov. 24, 1975, at 1, col. 6