DETAINEES OF the BROOKLYN
HOUSE OF DETENTION FOR
MEN et al., Plaintiffs,

v.

Benjamin MALCOLM, Commissioner of
Correction of the City of New York,
et al., Defendants.

No. 73 C 261.

United States District Court,
E. D. New York.

Oct. 8, 1976.

The Legal Aid Society Prisoners' Rights Society for plaintiffs by William E. Hellerstein, Joel Berger, Michael B. Mushlin, Eric Neisser, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants by Donald J. Tobias, New York City, of counsel.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

In this civil rights class action, plaintiffs move for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on one of the issues which remains before the Court. The action in its entirety concerns the conditions of incarceration for pretrial detainees at the Brooklyn House of Detention (BHD).[1] Plaintiffs seek injunctive relief, enjoining defendants from depriving BHD pretrial detainees their claimed constitutional right to contact visits. A contact visit is one where physical

---

1. This case was previously before The Honorable Orrin Judd, who had ruled on questions related to double celling, optional lockout, adequacy of recreation and daytime facilities, and eating arrangements in both BHD and the Queens House of Detention (QHD). *Detainees v. Malcolm*, 73 C 261, *Valvano v. Malcolm*, 70 C 1390 (July 31, 1974) aff'd, 520 F.2d 392 (2d Cir. 1975). Due to the untimely death of Judge Judd who labored arduously over this case, the remaining issues have been assigned to Judge Henry Bramwell. Reargument on contact visitation has been held.

contact is permitted between detainee and visitor. The frequency or duration of visitation schedules is not at issue. There being no material factual issues genuinely in dispute, this Court holds that as a matter of law the denial of contact visitation at BHD is unconstitutional and must be promptly rectified.

### The Facts

This action is concerned solely with BHD, a pretrial detention facility under the supervision of the New York City Department of Correction. An inmate at BHD may receive visitors twice a week during daytime or evening visiting hours.[2] During an average day, approximately 190 persons visit about one quarter of the detainee population. (Affidavit of Benjamin Malcolm, Commissioner of Corrections) A visitor enters the visitation area immediately adjacent to a street entrance, is identified, and proceeds to a waiting room on the visitors' side of the booths. A detainee is brought from his cellblock area to the visitation area but he remains separated from his visitor by a glass partition. No physical contact is permitted. Conversation is limited to speaking and listening on a private telephone in one of 54 booths. The telephones are maintained in good working order. (Affidavit of Benjamin Malcolm, Commissioner of Corrections)

According to the affidavit of the Director of Planning For the New York City Department of Correction, based upon the experience of Brooklyn detainees discharged between January 1, 1975 and March 31, 1975, the incarceration period is generally of short duration.[3]

In prior litigation involving contact visitation, the legitimate security concerns of the city corrections officials have been at issue. Here, we have a facility located in an urban area. Of the 648 detainees housed in BHD early this year, 573 were Brooklyn residents at the time of arrest. (Affidavit of Benjamin Malcolm) The accessibility of the facility to family and friends accounts for the high daily visiting rate which is in sharp divergence from the low visiting rate at various upstate institutions housing sentenced prisoners. Further, statistics compiled by the office of the Commissioner of Corrections indicate that there has been an increase in the escape rate of detainees in New York City since 1973.[4]

Contact visits are currently provided for pre-trial detainees in Suffolk County, see *Mancicone v. Cleary,* 74 C 575 (E.D.N.Y., June 30, 1975); in Nassau County, see *Palma v. Treuchlinger,* 72 C 1653 (E.D.N.Y., July 11, 1975, February 13, 1976); and at the House of Detention For Men on Rikers Island, see *Rhem v. Malcolm,* 527 F.2d 1041 (2d Cir. 1975); Such visits are scheduled to begin October 5, 1976 at the Bronx House of Detention, see *Ambrose v. Malcolm,* 76 C 190 (S.D.N.Y., May, 6, 1976) In addition, such visits are the practice at the Federal House of Detention in New York City as well as in upstate adult facilities for convicted and sentenced prisoners.[5] Nonetheless, defendants refer to the testimony of

---

2. As of September 13, 1976, a new visiting schedule is in effect, but this change does not affect the question of contact visitation.

3. The statistics show that 16.8% were incarcerated for one day or less; 27.2% for two days or less; 35.2% for three days or less; 43% for four days or less; 52.9% for one week or less; 81.1% for 30 days or less; 85.9% for 45 days or less and 89.3% for 60 days or less. These figures are represented to be typical of other quarters during the year. (Affidavit of Stuart Chagrin, Director of Planning).

4. In 1973, the rate was 13 escapes per 1000 inmates compared to 79 escapes during the first five months of 1975. The recapture rate of escapees from mainland facilities is below

that of escapees from Rikers Island. In 1975, of 34 escapes from Rikers Island, 28 were recaptured as contrasted with eight of 14 escapees from mainland facilities. (Affidavit of Arnett Gaston).

5. The City has conceded that contact visits are required at the Adolescent Remand Center on Rikers Island. See *Maldonado v. Malcolm,* 76 C 2854 (S.D.N.Y., filed June 28, 1976). Plaintiffs' supplementary affidavit dated August 5, 1976 submits that on June 22, 1976, at public hearings conducted by the New York City Board of Correction, defendant Commissioner of Correction Benjamin J. Malcolm gave oral testimony stating that "plans are underway to have contact visits in all institutions." But that, ". . . it's a money problem."

William Nagle, author of "The New Red Barn", before Judge Dooling in December 1975 in the case of the *Detainees of the Queens House of Detention v. Malcolm,* 73 C 1364, stating that only three of the twenty-six detention centers he had visited throughout the United States used contact visits as their principal method.[6]

Each housing tier at BHD has four telephones available throughout the day, free of charge, for the use of the approximately 120 inmates housed on the tier. Inmates also have contact with outside personnel during recreation, counseling and various cultural programs.

Plaintiffs assert that no genuine issue of material fact exists with respect to the current method of visitation and absence of physical contact and thus no trial on these issues is necessary. However, defendants contend that the number of visitors, the location of the waiting room area, the escape rate for mainland pre-trial detainees, the short duration of incarceration, the lack of time for classification procedures, the opportunity for telephone contact and the lack of nationwide practice of non-contact visits are material facts raising genuine issues which should be tried. Plaintiffs reply that none of these facts distinguishes BHD from the Tombs, or Rikers Island, or the Bronx House of Detention and therefore are not material. They assert that contact visitation is required as a matter of law and is a proper subject for summary judgment.

*Discussion*

■■■ A federal court should grant summary judgment when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir. 1972). Affirming a summary judgment for the plaintiff in a prisoners' rights case, the Second Circuit Court of Appeals has stated that "summary judgment as a useful procedural tool is not to be discarded on the flimsiest of excuses; the issues of fact must be genuine, not sham." *United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 584-5 (2d Cir. 1975). Those issues, contended to be ones of material fact by defendants, are not issues which diminish the appropriateness of the remedy of summary judgment. Rather, these facts play a role in determining the "scope and implementation" of contact visitation procedures after judgment has been entered. *Ambrose v. Malcolm,* 76 C 190 (S.D.N.Y., May 6, 1976) at 4.[7]

It is settled law in this Circuit that:
[T]he demands of equal protection of the laws and of due process prohibit depriving pre-trial detainees of the rights of other citizens to a greater extent than necessary to assure appearance at trial and security of the jail; and the same constitutional provisions prevent unjustifiable confinement of detainees under worse conditions than convicted prisoners. 371 F.Supp. at 623.

**6.** On the reargument of the question now before the Court, defendants indicated that if permitted to proceed to trial they could prove that the national norm was to deny contact visits to pre-trial detainees. In light of the pronouncements of the Second Circuit Court of Appeals on the applicable standard for this Circuit. *See infra* at 835, this Court is not impressed with the relevancy of that argument. Further, a series of recent cases from district courts in other circuits indicates that the Second Circuit view may well become the national view as litigation in this area continues. *Miller v. Carson,* 401 F.Supp. 835, 893-95 (M.D.Fla.1975); *Dillard v. Pritchess,* 399 F.Supp. 1225, 1240 (C.D.Cal.1975); *Campbell v. McGruder,* 416 F.Supp. 100 (D.C.C.1975), at 12; *Bay County Jail Inmates v. Bay County Board of Commissioners,* Civil Action No. 74–10056 (E.D.Mich.,

August 29, 1974), at 17–20. Two Courts have held that even convicted prisoners are entitled to contact visits. *Pugh v. Locke,* 406 F.Supp. 318, 330, 334 (N.D.Ala.1976), Memorandum Opinion; *Inmates, D.C. Jail v. Jackson,* 416 F.Supp. 119, 122–123 (D.C.C.1976).

**7.** Similarly, regarding defendants' contention that a mainland institution (such as BHD) poses greater security problems than an island facility (MHD), that is not a difference which changes the constitutional requirement of contact visitation. This Court is in agreement that "while security considerations must be taken into account in determining the scope and implementation of a contact visiting program, they may not act as a bar to that right." *Id.* at 3–4.

*Rhem v. Malcolm*, 507 F.2d 333 at 336 (2d Cir. 1974). It is an uncontested fact that pre-trial detainees are currently deprived of contact visits at BHD. Such deprivation of common forms of human communication at other detention facilities in the city has been held unconstitutional. As stated in the first *Rhem* case, such a visiting system "which denie[d] presumably innocent detainees . . . the right to shake hands with a friend, to kiss a wife, or to fondle a child, [is] inhumane and cruel in fact." *Rhem v. Malcolm*, 371 F.Supp. 594, 625–626 (S.D.N.Y.) *aff'd* 507 F.2d 333 (2d Cir. 1974) (contact visits at the Tombs), *Rhem v. Malcolm*, 389 F.Supp. 964, 968 (S.D.N.Y.) *aff'd*, 527 F.2d 1041, 1043 (2d Cir. 1975) (contact visits at MHD on Rikers' Island).

Defendants here contend that there exists a great difference between BHD and the aforementioned facilities which use contact visitation procedures. However, a similar argument was proposed and rejected in the first *Rhem* decision in that the defendants there tried to distinguish the Rikers Island situation from that of the Tombs. The Court in the second *Rhem* decision stated that "[A]n unconstitutional booth is no less objectionable because it sits on Rikers Island rather than in the Tombs." 527 F.2d at 1043. It must be added, "or in Brooklyn".

In reaching the conclusion that deprivation of contact visits in BHD is unconstitutional, this Court utilizes the standard enunciated by the Second Circuit in an earlier appeal of this case:

> [i]n providing for . . . detention, correctional institutions must be more than mere depositories for human baggage and any deprivation or restriction of the detainees' rights beyond those which are necessary for confinement alone, must be justified by a compelling necessity. (citations omitted)

*Detainees of Brooklyn House of Detention For Men v. Malcolm, supra,* 520 F.2d at 397.

Certainly it is essential that institutional security be maintained, but concern for safety factors does not necessarily preclude contact visits. Each of the conditions present at BHD existed at the Tombs. Both are in urban settings, accessible to visits, with the Tombs having slightly more visitors per day.[8] While the deprivations at BHD are not as severe as they appear to have been at the Tombs, there remains no legitimate reason for denying detainees rights to which they are constitutionally entitled.

This Court is not unaware of the City's concern with the security of its institution and the possible effect contact visits may have on this legitimate concern. However, the feasibility of a classification system to determine which inmates are security risks and thus should not participate in contact visits has been upheld. *Rhem v. Malcolm, supra,* 507 F.2d at 338. Commissioner Malcolm's assertion that even low bail detainees attempt escape and that the short duration of incarceration makes identification of security problems difficult, do not appear to be overwhelming obstacles and are not reasons for denying plaintiffs fundamental constitutional rights.

In short, the security of the institution (exclusion of contraband) and the risk of escape appear to be no greater at BHD than at the Tombs, provided that a system of classification is used to screen high risk detainees who should be denied contact visits.

Moreover, the fiscal difficulties of New York City cannot absolve the defendants of their constitutional obligations. This argument has been dismissed repeatedly by the Court of Appeals in this Circuit, reminding us that "an individual's constitutional rights may not be sacrificed on the ground that the city has other and more pressing priorities. . . . Denial of the presumptively innocent detainee's constitutional rights represents an impermissible price to pay for this retention in custody." *Rhem v. Malcolm, supra,* 527 F.2d at 1043–44. In fact, a prior appeal in this case led

---

8. Information contained in affidavit of Joel Berger, dated February 20, 1976, based on testimony of Joseph D'Elia, Director of Operations, New York City Department of Corrections.

the Second Circuit to state that "inadequate resources of finances can never be an excuse for depriving detainees of their constitutional rights." *Detainees of the Brooklyn House of Detention For Men v. Malcolm, supra,* 520 F.2d at 399. The financial troubles of the City may, of course, be a factor to consider in the plan which will result from this order.

It is therefore SO ORDERED that the City of New York submit a plan to provide contact visits for all detainees other than those who are identified as security risks. The criteria for designating a detainee as a security risk should be included in the plan. The plan is to be submitted within 90 days. Plaintiffs are to reply within 14 days, indicating their view on the appropriateness of the plan. The Court will meet with the attorneys for both sides on February 3, 1977 at 10:00 A.M. Defendants are invited to request a conference early in the 90 day period if any problems arise.