Iola FORTS and Fannie Bryant, detainees of the New York City Correctional Institution for Women, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Benjamin J. MALCOLM, Commissioner of Correction of the City of New York, et al., Defendants.

No. 76 Civ. 101 (CHT).

United States District Court, S. D. New York.

Feb. 1, 1977.

The Legal Aid Society, Prisoners' Rights Project, New York City, William E. Hellerstein, Joel Berger, Marjorie M. Smith, New York City, of counsel, New York Civil Liberties Union, New York City, Eve Cary, New York City, of counsel, for plaintiffs.

W. Bernard Richland, Corp. Counsel, New York City, for defendants; Rosemary Carroll, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

This action has been brought by pretrial detainees at the New York City Correctional Institution for Women ("NYCCIFW"), located on Rikers Island, who ask the Court to enjoin a number of practices at the institution which are said to violate the plaintiffs' constitutional rights. Before the Court at this time are three motions: (1) the plaintiffs' motion for a preliminary injunction as to many of the claims stated in the complaint and for certification of the plaintiffs' class; (2) the defendants' cross-motion for partial summary judgment on a smaller number of claims; and (3) a further cross-motion by plaintiffs for partial summary judgment on two claims. For the reasons stated below, the Court certifies this action as a class action. Partial summary judgment is awarded to plaintiffs on their claims concerning contact visits and personal attire and to defendants on the claim concerning grooming standards. Summary judgment is denied as to all other claims, and the motion for a preliminary injunction is denied. The case is referred to United States Magistrate Sol Schreiber for all pretrial purposes.

## CLASS ACTION

The plaintiffs were, at the time of the filing of the complaint, pretrial detainees at the NYCCIFW. They challenge institutional practices which are said to affect the daily lives of all pretrial detainees in that institution. Thus, their request for class certification is even stronger than that presented to this Court by the plaintiff-detainees in *Jordan v. Malcolm*, 75 Civ. 1071 (CHT) (S.D.N.Y. Jan. 21, 1975), which was certified as a class action.[1] Indeed, the defendants do not oppose class action certification. Defendants' Memorandum of Law, filed March 22, 1976, at 1. The apparent fact that all three original class representatives have left the NYCCIFW before class certification will not defeat the motion where plaintiffs are pretrial detainees. *Gerstein v. Pugh,* 420 U.S. 103, 110–11 n.11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Therefore, the Court directs, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure ("Rules"), that this action may be maintained as a class action on behalf of all persons held in detention at NYCCIFW for the purpose of ensuring their presence in court pending disposition of criminal charges against them, and also directs that notice of the action be provided to all members of the class. Proposals for the provision of such notice shall be submitted forthwith to United States Magistrate Sol Schreiber, who shall hear those proposals and determine the method and form of the notice.

## PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT

Plaintiffs have moved for a preliminary injunction as to many, but not all, of their claims. At the same time, the defendants have moved for partial summary judgment on most of these same claims, as to which they contend there are no genuine

---

1. In *Jordan* this Court found that it was "inevitable that the various detainees [would] receive different treatment at different times, according to the conditions of the moment." 75 Civ. 1071 (CHT) at 4 (S.D.N.Y. Jan. 21, 1976). In the instant case, however, the constitutional violations alleged by the plaintiffs are the result of institutional policies and are presumably suffered equally by all members of the plaintiffs' class.

issues of material fact. As discussed below, the Court finds that genuine issues of fact exist as to all but three of these claims and therefore that summary judgment must be denied on those claims. The defendants contend that they are entitled to partial summary judgment since the plaintiffs' verified complaint, the only sworn document submitted in opposition to the defendants' motion, does not qualify as the affidavit required by Rule 56(e). A verified pleading does qualify as such an affidavit, however, if it meets the specific requirements set forth in Rule 56(e). *Runnels v. Rosendale,* 499 F.2d 733, 734 n.1 (9th Cir. 1974); *see Schoenbaum v. Firstbrook,* 405 F.2d 200, 209 (2d Cir. 1968); *Dressler v. MV Sandpiper,* 331 F.2d 130, 131 (2d Cir. 1965). In this regard, Rule 56(e) states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Here, there is no dispute that the verified complaint is "made on personal knowledge," or that the plaintiffs are "competent to testify to the matters stated" in the complaint. The only question concerns whether the complaint "sets forth such facts as would be admissible in evidence" and whether such facts are sufficiently "specific" as opposed to "mere allegations."

Most of the relevant paragraphs in the complaint contain statements such as "[d]uring the winter months, plaintiffs are accorded virtually no access to the outdoors." (¶ 11). Certainly such statements would be admissible into evidence. Even if they were to be characterized as opinions or conclusions, they would be admissible under Rules 701 and 704 of the Federal Rules of Evidence which permit opinions if they are "rationally based on the perception of the witness and . . . helpful to a clear understanding of his testimony or the determination of a fact in issue", even if they embrace "an ultimate issue to be decided by the trier of fact." With respect to their specificity, the Court notes that the allegations of the verified complaint are no more general than the responses in the affidavit of defendant NYCCIFW Superintendent Essie Murph upon which the defendants principally rely. For example, with respect to outdoor recreation in the winter defendant Murph states:

"It is most unusual for women here to request recreation outdoors in the winter season. However, I wish to encourage them to do so and I am attempting to obtain funds to construct a handball court outdoors." (¶ 6).

Thus, on all plaintiffs' claims other than those concerning contact visiting and personal attire and grooming standards the Court finds that genuine issues of material fact exist and therefore denies summary judgment.

On the issue of inmate discipline, both parties acknowledge that there is no dispute concerning certain facts. Nevertheless, summary judgment must be denied for two reasons. First, the existence of genuine issues of material fact with respect to many elements of the disciplinary procedures at the NYCCIFW make it imprudent for this Court to pass on the due process claims of the plaintiffs without a full and complete picture of the actual practices employed at the institution. Second, no affidavits have been introduced as to the effect which the addition of the elements requested by the plaintiffs would have on security and other aspects of life at NYCCIFW. The recent decisions of the Supreme Court in the related area of disciplinary procedures for sentenced prisoners [2] demonstrate

---

2.  *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Wolff v. McDon-* *nell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

the necessity for a full evidentiary hearing on these questions before this Court can pass on the disciplinary issue.

■ At the same time, the Court feels that it is inappropriate to grant a preliminary injunction as to those claims on which summary judgment is denied. In seeking a preliminary injunction the plaintiffs assume "the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that they [raise] serious questions going to the merits and that the balance of hardships [tips] sharply in their favor." *Robert W. Stark, Jr., Inc. v. New York Stock Exchange, Inc.,* 466 F.2d 743, 744 (2d Cir. 1972). In satisfying this burden, "the facts upon which plaintiffs base their right to relief must be essentially undisputed or appear with such substantial clarity that the Court can weigh and determine the probability of success." *Brass v. Hoberman,* 295 F.Supp. 358, 361 (S.D.N.Y.1968). This Court is not convinced that the plaintiffs have established probable success or serious questions going to the merits where their claims that they are subject to institutional practices which violate the clearly established constitutional rights of detainees are met in almost every instance with the defendants' sworn denial that such practices exist. In the face of this strong factual conflict, a preliminary injunction would be inappropriate.

■ The claims with respect to which summary judgment is appropriate concern contact visits and inmate grooming and appearance. There is no dispute over the provision of contact or "open" visits at the NYCCIFW. The defendants' Rule 9(g) statement, uncontroverted on this issue by the plaintiffs, states that detainees are permitted "two contact visits per month by adults . . . . , each one hour in duration" (¶ 31), and "two contact visits per month by children, one of two hours duration, one of one hour duration" (¶ 32). These contact visits are in addition to the regular "closed" visiting hours provided daily Monday through Friday from 5:30 to 8:00 p.m. (Murph Affidavit ¶ 4). Each inmate is permitted one half-hour visit daily. These visits take place in booths in which the detainee is separated from her visitor by glass; communication is by telephone. (Verified Complaint ¶¶ 17, 23, Murph Affidavit ¶ 4).

The constitutionality of booth visiting under circumstances almost identical to those in the instant case have been discussed at length in this Circuit in the related cases of *Rhem v. Malcolm* and *Benjamin v. Malcolm,* which in part have treated the visiting conditions for male pretrial detainees in the Manhattan House of Detention (now closed) and the House of Detention for Men on Rikers Island. In both cases District Judge Lasker ordered that all personal visits accorded plaintiffs should be contact visits except in instances when an established classification system indicated that institutional security would be jeopardized by such a visit and an application to the court for denial of such a visit had been made. *See Rhem v. Malcolm,* 389 F.Supp. 964, 968, 972 (S.D.N.Y.), *aff'd,* 527 F.2d 1041 (2d Cir. 1975). This Court can see no reason why this clear conclusion with respect to male detainees should not be applied to female detainees. To paraphrase the court of appeals, an unconstitutional booth is no less objectionable because women sit in it rather than men. *See Rhem v. Malcolm,* 527 F.2d 1041, 1043 (2d Cir. 1975).

In attempting to justify the NYCCIFW policy on contact visits, defendant Murph has stated that this policy represents a "fair accommodation" between the needs of the inmates and institutional concerns of "adequate security" and "personnel constraints." The court of appeals has held that only the concern for security is applicable here. *Id.; see Rhem v. Malcolm,* 507 F.2d 333, 336, 338–39 (2d Cir. 1974). On this issue, however, defendant Murph has submitted only her conclusory opinion that the present policy represents a "fair accommodation" between competing interests. This statement, standing alone, does not satisfy the clear standard enunciated by the court of appeals. Thus, this Court finds that plaintiffs

are entitled to have all their visits be contact visits and accordingly they are awarded partial summary judgment on this issue.

Specific implementation of these principles depends, however, on the practical limitation of available space and security considerations. Defendant Murph, in her affidavit, states that a "room which can accommodate 40 visitors" is currently available and is being used for contact visits. (¶ 4). Thus, there seem to be no physical constraints: the size of the room is clearly more than sufficient to handle the average of "20 visitors a day" who come to the "closed" visit facility. The Court therefore directs that all visits to detainees at the NYCCIFW be contact visits within 30 days of the entry of this order, except where the defendants can demonstrate, through the use of an established classification system, that institutional security would be jeopardized by a particular visit.

■ Partial summary judgment is also appropriate on the claims concerning personal attire and grooming standards for detainees at the NYCCIFW. Plaintiffs claim that they are not allowed to wear their hair short; defendants respond that there is no such prohibition. The Court has examined the copy of the picture of plaintiff Forts with her hair cut short (Murph Affidavit, sworn to April 14, 1976, Exhibit 1) and other pictures of inmates with their hair cut short (Murph Affidavit, sworn to March 17, 1976, Exhibits 5 and 32) and concludes that there is no issue of material fact: the detainees are allowed to wear their hair short. Accordingly, the defendants are awarded partial summary judgment on this issue.

■ On the issue of the wearing of pants at the NYCCIFW, the defendants acknowledge that their policy is that no pants may be worn. (Defendants' Rule 9(g) Statement ¶ 15). Defendant Murph attempts to justify this policy by citing a similar rule for *sentenced* inmates at the NYCCIFW. She concludes:

"Because administratively it would be difficult to enforce a rule that permits slacks for detention women and no slacks

for sentenced women, none of the women at NYCCIFW wear slacks." (Murph Affidavit, sworn to March 17, 1976, ¶ 13). A justification grounded solely in administrative convenience is not sufficient to support this prohibition. The Supreme Court's recent discussion of regulation of personal appearance in *Kelly v. Johnson*, 425 U.S. 238, 247–48, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) makes it clear that such regulations must be invalidated if it is demonstrated that there is no rational connection between the regulation and a legitimate state interest. The Court of Appeals for the Second Circuit has held that pretrial detainees cannot be deprived of the rights of other citizens to a greater extent than necessary to assure appearance at trial and security of the jail". *Rhem v. Malcolm, supra*, 507 F.2d at 336. Since the prohibition of the wearing of pants bears no rational connection to either of these legitimate interests, it must be found invalid. Accordingly, partial summary judgment is awarded to plaintiffs on this issue, and defendants are enjoined from prohibiting the wearing of pants by pretrial detainees at the NYCCIFW.

In sum, the motions for a preliminary injunction and for partial summary judgment are denied as to all claims save those concerning contact visits and personal appearance and grooming standards. With respect to these claims, the defendants are awarded partial summary judgment on the issue of the wearing of short hair, and the plaintiffs are awarded partial summary judgment on contact visiting and the wearing of pants. The defendants are directed to make all visits to pretrial detainees at the NYCCIFW contact visits within 30 days of the entry of this order and are enjoined from prohibiting the wearing of pants by pretrial detainees at the NYCCIFW. This case is referred to United States Magistrate Sol Schreiber for all pretrial purposes.

So ordered.