HAPAG–LLOYD, A. G., Plaintiff,

v.

Ernest L. LEVINE d/b/a Gerald Export & Import Company, Defendant.

No. 77 C 2663.

United States District Court,
N. D. Illinois, E. D.

June 14, 1979.

John P. MacRae, Dennis M. Robb, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

Edgar A. Blumenfeld, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

In this admiralty suit, the plaintiff seeks $3,225.60 in unpaid freight charges under a contract of carriage providing for goods exported by defendant to be shipped from Norfolk, Virginia to Felixstowe, England. The plaintiff, Hapag-Lloyd, is a German corporation engaged as a common carrier of merchandise on the high seas. Defendant, Ernest L. Levine, doing business as Gerald Export and Import Company, is an exporter and importer of merchandise in both foreign and domestic commerce. Our jurisdiction is predicated upon 28 U.S.C. § 1333. After plaintiff filed its original complaint, defendant filed a counterclaim based on the antitrust laws. Plaintiff's motions for summary judgment on its freight claim and the antitrust counterclaim are now pending.

*Plaintiff's Claim for Ocean Freight*

■ Plaintiff contends that on or prior to July 23, 1975, it executed a contract of carriage with defendant, pursuant to which plaintiff transported on the vessel M/V Alster Express one container of carpet measuring 2016 cubic feet. The carpet was shipped from Norfolk, Virginia to Felix-

stowe, England, with freight charges totalling $3,225.60, which defendant did not pay. Contending that no material question of fact remains as to this transaction, plaintiff seeks summary judgment.

In support of its motion, plaintiff first points to defendant's answer to the amended complaint, which admits that on or after July 23, 1975, plaintiff took one container of carpeting measuring 2016 cubic feet aboard the M/V Alster Express in Norfolk and delivered it to Felixstowe. *See* Defendant's Answer to Amended Complaint, ¶ 5. Further, defendant's answers to plaintiff's interrogatories indicate that the container of carpet referred to in defendant's answer was exported by defendant and sold to a customer in the United Kingdom. *See* Answers to Interrogatories, ¶ 2, ¶ 3(A)–(G). Furthermore, plaintiff notes that the freight charge contained in the carriage contract and the bill of lading was fixed by the North Atlantic United Kingdom Freight Conference Tariff No. (47) FMC–2. *See* Plaintiff's Exhibit A. The Shipping Act of 1916 requires a carrier to charge the figure contained in its filed tariff. 46 U.S.C. § 817.

In response, defendant contends that no privity of contract existed between plaintiff and defendant because the parties to the carriage contract were defendant and Fred P. Gaskell Company, the forwarding agent in the transaction. Defendant claims that plaintiff has not proved an assignment of rights from Gaskell to plaintiff, and without such an assignment plaintiff has no right to the freight charges. Defendant further contends that plaintiff has not conclusively established that we have subject matter jurisdiction over plaintiff's claim. Finally, defendant claims that the contract of carriage is unenforceable because plaintiff engaged in discriminatory rate practices.

Plaintiff's response to defendant's privity argument is that plaintiff was a party to

the carriage contract, and that even if Gaskell was the party in privity with defendant, Gaskell assigned any rights it may have had to plaintiff. After plaintiff filed its original complaint against defendant, defendant filed a counterclaim for interpleader seeking to add Gaskell as a party and to obtain adjudication as to which party is entitled to recover from defendant. Gaskell then filed a verified answer, in which it stated that it has no contract with defendant covering the shipment of the carpet, and that Hapag-Lloyd is entitled to recover the entire amount of the freight charges. *See* Answer to Counterclaim for Interpleader, ¶ 3. The answer further stated that Gaskell acted only as a freight forwarder, a task which involved arranging to have the carpet loaded aboard the Alster Express and included overseeing the execution of the freight contract between plaintiff and defendant. *Id.*, ¶ 6. Finally, to remove all doubt, the answer purported to assign to plaintiff all rights Gaskell may have had in the collection of the freight charges. *Id.*, ¶ 4.

In determining whether a material question of fact remains here, we note first that defendant's jurisdictional argument formed the basis of defendant's motion to dismiss filed on October 3, 1977, which we denied on October 21, 1977. Thus we need not reconsider any jurisdictional issues. We do note, however, that we are still certain that we have admiralty jurisdiction under 28 U.S.C. § 1333 to resolve a dispute relating to a contract for carriage of goods across the Atlantic Ocean. Second, the proper charge for transporting the carpet under the applicable tariff, approved by the Federal Maritime Commission (FMC), was $3,225.60, the amount plaintiff charged.[1] Thus defendant cannot be heard to claim that plaintiff charged an illegal rate for this transaction.

Because defendant admits that its container of carpet was transported to England on the Alster Express and that defendant

1. The tariff in effect in July, 1975 provided for a charge of $64.00 per forty cubic feet. *See* Plaintiff's Exhibit A, North Atlantic United Kingdom Freight Conference Tariff No. (47) FMC–2. The container of carpet measured 2016 cubic feet, so $3,225.60 was the proper charge.

did not pay the freight charges, the only issue remaining is which party is entitled to recover the freight charges from defendant. We conclude that no material question of fact remains as to plaintiff's right to the freight charges. Defendant disputes not that a contract existed but only that plaintiff rather than Gaskell was the other party to it. The only evidence of a contractual relationship between defendant and Gaskell indicates that Gaskell served only as a freight forwarding agent. Gaskell's answer to the counterclaim for interpleader convincingly demonstrates that Gaskell had no contract of carriage with defendant and that Gaskell performed only the duties of a forwarding agent. See Answer to Counterclaim for Interpleader, ¶ 6.[2] Moreover, the "freight contract," attached as Plaintiff's Exhibit 1, does not establish a contractual relationship between Gaskell and defendant. The contract is a printed form with the name of plaintiff's general agent, United States Navigation, Inc., printed at the top and the bottom, defendant's name typed at the top, and Gaskell's name typed at the bottom. The form does not name anyone specifically as a party to the contract, but Hapag-Lloyd's name does appear as the "line" and the Alster Express is named as the ship. Thus to the extent that the ambiguous form evidences a contract of carriage, Hapag-Lloyd, and not Gaskell, is identified as the carrier responsible for transporting the carpet. We fail to see how the document establishes defendant obligated itself to Gaskell for the freight charges.

We need not trouble ourselves with the ambiguities inherent in the form contract, however, because Hapag-Lloyd's bill of lading clearly indicated that the "exporting carrier" was to be M/V Alster Express, that the "shipper/exporter" was defendant, and that Gaskell would be the forwarding agent. See Plaintiff's Exhibit 2. Further, the document clearly indicated that it was Hapag-Lloyd's bill of lading. The bill of lading thus bound both plaintiff and defendant, because one of the functions of a bill of lading is to serve as a contract of carriage. See Amoco Overseas Co. v. S. T. Avenger, 387 F.Supp. 589 (S.D.N.Y.1975); Asbestos Corp., Ltd. v. Compagnie de Navigation Fraissinet et Cyprien Fabre, 345 F.Supp. 814 (S.D.N.Y.1972); 2A Benedict on Admiralty § 31 at 4–1 (1977). Moreover, Gaskell has stated that one of its responsibilities as freight forwarder was to see that the ocean bill of lading was prepared for defendant and submitted to plaintiff "for execution as a contract of carriage between Hapag-Lloyd and Gerald." See Answer to Counterclaim for Interpleader, ¶ 6e. Defendant has not challenged the validity of the bill of lading or any of the statements in the Gaskell answer.[3]

We see no reason to depart from the basic policy of admiralty law that carriers be paid for their services. See Bartlett-Collins Co. v. Surinam Navigation Co., 381 F.2d 546, 549 (10th Cir. 1967). Defendant does not dispute that plaintiff transported defendant's goods. This is not a case in which the shipper has already paid the freight charges to a defaulting forwarder and thus would have to pay twice if the carrier recovered. See id.; Koninklijke Nedlloyd BV v. Uniroyal, Inc., 433 F.Supp. 121 (S.D.N.Y. 1977). Moreover, defendant is in no danger of being found liable to Gaskell on the freight charges, because Gaskell has admitted in its answer that it is not entitled to the freight charges and has already accepted defendant's offer of judgment in the amount of $95.14, the amount Gaskell charged defendant for the freight forwarding services. Finally, defendant's conten-

---

2. Gaskell's answer contains a sworn statement from the president of the company to the effect that the contents of the answer are true "to his own knowledge." Inasmuch as this pleading is verified and based on knowledge rather than belief, we will treat the answer as an affidavit under Federal Rule of Civil Procedure 56(e). See Runnels v. Rosendale, 499 F.2d 733, 734 n.1 (9th Cir. 1975).

3. Defendant does challenge the existence of an assignment of rights from Gaskell to plaintiff. Although it is not necessary to our analysis, we do note that Gaskell's sworn answer does expressly assign to plaintiff any rights to the freight charges that Gaskell may have had.

tion that plaintiff was an undisclosed principal is difficult to believe in light of the bill of lading and a July 11, 1975 letter from defendant to Gaskell regarding the shipment of carpet which states that the ship was to be the Alster Express and the carrier was "Happ Lloyd."

The evidence available to us on this summary judgment motion convinces us that defendant knew that plaintiff was the carrier, that Gaskell was merely the forwarding agent, and that a contractual obligation arose between defendant and plaintiff which required defendant to pay plaintiff for the services that plaintiff performed. The rate was clearly proper, and defendant does not contend that the goods did not reach their destination or were damaged in transit. Defendant was obligated to pay the $3,225.60 freight charge to the carrier. Plaintiff's motion for summary judgment on the ocean freight claim is granted.

### Antitrust Counterclaim

In its antitrust counterclaim, defendant contends that plaintiff has engaged in discriminatory pricing and price fixing in violation of § 1 of the Sherman Act and § 2(e) of the Clayton Act. According to defendant, plaintiff and other carriers comprising the North Atlantic Shipping Conference conspired to fix prices and impose a discriminatory rate structure.

■ Plaintiff contends that it is entitled to summary judgment on the counterclaim. Plaintiff argues that none of defendant's claims are cognizable under the Robinson-Patman Act, inasmuch as the Robinson-Patman Act applies only to discriminatory pricing of commodities. Plaintiff performs a service unrelated to any sale of commodities. Further, plaintiff contends that the doctrine of primary jurisdiction dictates that we defer our consideration of defendant's Sherman Act claims until the FMC has an opportunity to determine whether the rates that plaintiff charged were in compliance with requirements of the Shipping Act of 1916 and thus exempt from antitrust regulation. Plaintiff argues that a dismissal of the counterclaim rather than

a stay is proper here, inasmuch as defendant has failed to introduce a shred of evidence indicating that plaintiff charges or charged discriminatory rates.

Defendant's response to plaintiff's motion merely argues that the shipping industry is not immune from antitrust regulation. Defendant further states that it "can show rates in variance with approved FMC rate structures," and that defendant's affidavit and exhibits support an inference that material questions of fact precluding summary judgment remain.

We agree with plaintiff's contention that the Robinson-Patman Act does not encompass discriminatory prices as to services rather than commodities. Section 2(e), the section that plaintiff has allegedly violated, prohibits discrimination between purchasers of a commodity by furnishing "any services or facilities connected with the processing, handling, sale, or offering of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms." 15 U.S.C. § 13(e). Thus unless the discrimination in the price of services is connected with the sale of a commodity, the purchaser is not protected by the Robinson-Patman Act. The Seventh Circuit has noted that the term "commodity" is "restricted to products, merchandise or other tangible goods." *Baum v. Investors Diversified Services*, 409 F.2d 872, 874–75 (7th Cir. 1972); *see also TV Signal Company of Aberdeen v. American Telphone & Telegraph Co.*, 462 F.2d 1256 (8th Cir. 1972). Plaintiff's services clearly do not fit within this definition, nor are those services connected with the sale of a commodity. Defendant's allegations under the Robinson-Patman Act do not state a claim.

■ Further, we agree with plaintiff's contentions regarding the primary jurisdiction of the Sherman Act claim. Section 15 of the Shipping Act establishes the requirements for obtaining FMC approval of tariff contracts and rates. *See* 46 U.S.C. § 814. The section requires submission of all agreements with another carrier or "other person subject to this chapter" that have the effect of

[F]ixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; pooling or apportioning earnings, losses or traffic; allotting ports or restricting or otherwise regulating the number and character of sailings between ports; limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; or in any manner providing for an exclusive, preferential or cooperative working arrangement.

After notice and hearing the FMC may cancel, disapprove or modify any agreement that is "unjustly discriminatory or unfair," would "operate to the detriment of the commerce of the United States," is contrary to the public interest, or is in violation of the Shipping Act. All other agreements are to be approved by the FMC, and any "agreement, modification, or cancellation lawful under this section, or permitted under section 813a of this title" is exempt from the antitrust laws. Thus the Shipping Act clearly contemplates that anticompetitive agreements will be executed and permissible in the shipping industry. *See FMC v. Pacific Maritime Association*, 435 U.S. 40, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978). The Supreme Court has specifically held, however, that the Shipping Act did not impliedly repeal all antitrust regulation of the shipping industry. *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966). Thus only those agreements that have been approved or modified by the FMC are exempt from the antitrust laws. *Id.* at 216, 86 S.Ct. 781. We are powerless to impose antitrust sanctions on plaintiff unless the allegedly discriminatory prices charged by the plaintiff are not part of the FMC approved agreements.

The doctrine of primary jurisdiction dictates that the FMC determine this issue here. As the Supreme Court noted in *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), the doctrine of primary jurisdiction is designed to allow the agency entrusted with the regulation of a particular subject matter, and possessed of the expertise to resolve questions related to that subject matter, to determine issues not within the conventional experience of judges. The Court emphasized that the doctrine is applicable even if "the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined." *Id.* at 574, 72 S.Ct. at 494. The Supreme Court has on several occasions recognized the applicability of the primary jurisdiction doctrine to the shipping industry. *See Far East Conference, supra; Carnation Co. supra; United States Navigation Co., Inc. v. Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 247, 76·L.Ed. 408 (1932); *Port of Boston Marine Terminal Assoc. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970). The instant case is especially suited to the application of the primary jurisdiction doctrine. If the FMC, after considering such items as the conference agreement, the dual rate contract, and the published tariff rates, determines that the rates plaintiff charged are not blessed by FMC approval, then this determination could "serve as a premise for legal consequences to be judicially defined" within the confines of the antitrust laws by this court. Thus where, as here, the conduct allegedly violative of the antitrust laws is arguably lawful under the Shipping Act, we must defer to the expertise of the FMC. *See Carnation Co., supra*, 383 U.S. at 222, 86 S.Ct. 781.

Although plaintiff contends that a dismissal of defendant's counterclaim rather than a stay is appropriate here, we unfortunately do not agree. A dismissal predicated upon primary jurisdiction is improper unless dismissal will not prejudice any party. *United States v. Michigan Nat'l Corp.*, 419 U.S. 1, 5, 95 S.Ct. 10, 42 L.Ed.2d 1 (1975). If a party seeks antitrust treble damages rather than injunctive relief, a dismissal of the action may prejudice the party's rights, because by the time the agency acts, the statute of limitations may operate to bar reinstatement of plaintiff's claim in federal

court. *See* 15 U.S.C. § 15b; *Carnation Co.,* *supra* 383 U.S. at 222–23, 86 S.Ct. 781; *Laveson v. Trans World Airlines,* 471 F.2d 76, 84 (3d Cir. 1972); *Mark Aero, Inc. v. Trans World Airlines,* 411 F.Supp. 610 (S.D. N.Y.1976). Therefore a stay of defendant's counterclaim pending FMC determination of defendant's claims is appropriate.

We must emphasize that we choose the stay over outright dismissal reluctantly. At the status hearing on September 13, 1978, we ordered defendant to submit a Rule 56(e) affidavit in response to plaintiff's motion for summary judgment on the counterclaim. This affidavit was to indicate what information defendant was unable to provide that would demonstrate the existence of material questions of fact, and what information could be provided if we allowed further discovery. The affidavit of less than two pages that defendant Levine submitted merely repeated the allegations of the counterclaim, and the contentions contained in the affidavit are predicated upon Mr. Levine's beliefs. As plaintiff notes, the affidavit fails completely to meet Rule 56(e) requirements. The affidavit does not indicate what information would be available on further discovery, nor why the information is currently unavailable. *See* 4A *Moore's Federal Practice,* ¶ 33.26 at 33–140 (1978). Moreover, we fail to see how any of the documentary evidence submitted by defendant indicates that plaintiff or any other carrier charged discriminatory rates or rates other than those contained in the FMC approved tariff. Thus defendant has failed to show either that a material question of fact exists regarding the legality of plaintiff's rates or that defendant could produce such a question with further discovery. Thus if we were not constrained by the primary jurisdiction doctrine to allow the FMC to determine whether plaintiff charged unapproved rates, we would have to conclude that plaintiff was entitled to summary judgment. Therefore, because of the poor quality of defendant's presentation and because we are not entirely certain that defendant's counterclaim was not a delaying tactic designed to up the ante in plaintiff's $3,225.60 collection action, we will not stay action on this counterclaim indefinitely. If defendant does not institute formal proceedings with the FMC within three months from the date of this decision, we will dismiss the counterclaim for want of prosecution. Furthermore, we find that there is no just reason to delay the entry of a final judgment on plaintiff's claim for freight charges. *See* F.R.Civ.P. 54(b).

Plaintiff's motion for summary judgment on the ocean freight claim is granted and the Clerk is directed to enter final judgment in favor of plaintiff Hapag-Lloyd, A. G. and against the defendant Ernest Levine d/b/a Gerald Export & Import Company in the amount of $3,225.60 and costs. Plaintiff's motion on the antitrust counterclaim is deferred pending action by the FMC or defendant's failure to seek such action. Cause is set for report on status on September 26, 1979 at 9:30 a. m.