**Theodore G. FORE and Ralph N. Harrison, Plaintiffs,**

v.

**Governor Mills GODWIN et al., Defendants.**

**Civ. A. No. 75–0482–R.**

United States District Court, E. D. Virginia, Richmond Division.

Feb. 2, 1976.

Theodore G. Fore, and Ralph N. Harrison, pro se.

Burnett Miller, III, Asst. Atty. Gen., Robert W. Duling, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, federal prisoners formerly confined to the Richmond, Virginia City Jail, bring this action against several state and federal officials, in which they complain of (1) the mail service at the City Jail; (2) the medical treatment afforded prisoners; (3) official interference with inmate attempts to communicate with their attorneys; and (4) the general living conditions. Jurisdiction is attained pursuant to 28 U.S.C. §§ 1343, 1361. The matter comes before the Court on defendants' motion for summary judgment and plaintiffs' response thereto.

■ Plaintiffs' claims will be treated seriatim: Plaintiffs do not allege that jail officials are illegally disposing of correspondence. Rather, this aspect of the complaint relates to the speed at which the mail is delivered. Affidavits supplied by defendants show that the mail is delivered to the jail at approximately 12:00 noon. It is then checked to see if the addressee is confined at the Richmond City Jail. If the addressee is so confined, the mail is opened and inspected for contraband. Mail from attorneys or courts is opened in the presence of the addressee and checked for contraband. If money is enclosed in any mail it is removed and placed in the addressee's account at the City Jail and the inmate is given a receipt. The following morning at approximately 6:00 a. m., after the mail has been sorted, the mail is handed out during the breakfast meal. The eighteen hours it takes to process the mail may be lengthy, but lies certainly within permissible constitutional limits. Cf. *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

■ Plaintiffs' allegations relating to medical treatment are likewise meritless. Prison records submitted indicate that each inmate complaining of improper medical treatment did, in fact receive some treatment by a medical doctor or dentist. Questions of medical judgment are not subject to judicial review. A prisoner cannot be ultimate judge of what medical treatment is necessary or proper and courts must place their confidence in the reports of reputable prison

physicians. *Cole v. Williams,* 2 Cir., 526 F.2d 588 (1975); *Edwards v. Broughton,* 519 F.2d 1399 (4th Cir. 1975).

■ Plaintiffs' allegations concerning interference with attempted communications are likewise refuted on the record. Prison records indicate that inmates are given stationery, envelopes and stamps upon request. Moreover, plaintiff Fore was able to complete telephone calls on the day requested. As there has been no attempt to refute defendants' records and affidavits in this regard, plaintiffs have apparently abandoned this point.

■ Lastly, plaintiffs raise several issues with respect to the general living conditions in the jail. Those complaints relating to the food must be characterized as frivolous. *Krist v. Smith,* 439 F.2d 146 (5th Cir. 1971). The generalized allegations of overcrowdedness and verbal abuse from correctional officers do not, in this instance, rise to constitutional dimensions and hence are not cognizable under 42 U.S.C. § 1983.[1]

■■ Perhaps the most serious complaint centers on alleged inadequate protection from violence and sexual assault. It is now settled that the Eighth and Fourteenth Amendments are violated when prisoners are subjected to a "reign of terror" caused by other prisoners.

*Woodhous v. Virginia,* 487 F.2d 889 (4th Cir. 1973); *Holt v. Sarver,* 442 F.2d 304 (8th Cir. 1971). An isolated instance of inmate violence, however, cannot be the basis for an action under § 1983. *Price v. Hunnicult,* No. 73–261–R (E.D.Va. 1975); *Penn v. Oliver,* 351 F.Supp. 1292 (E.D.Va.1972). Plaintiffs' claim is based on general conditions rather than isolated attacks and, hence, is actionable.

■ Plaintiffs do not allege that they were personally attacked or beaten, but merely that such incidents do in fact occur. Thus, their individual claim would be limited to injunctive relief. Moreover, defendants' uncontroverted affidavits establish that both plaintiffs are presently incarcerated in facilities other than the City Jail. As plaintiffs are no longer subject to the conditions of which they complain, their individual claims are moot. Cf. *Preisner v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272, 43 U.S.L.W. 4877 (June 25, 1975); *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Plaintiffs, however, seek to pursue their claims in the form of a class action. The fact that named plaintiffs are no longer subject to the complained of conditions would not moot the controversy as to members of the class. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Courts, however, are most reluctant to certify a class when a prisoner is acting pro se. *Oxendine v. Williams,* 509 F.2d 1405 (4th Cir. 1975). This is particularly true in the instant case where named plaintiffs now reside long distances from the City Jail would encounter severe difficulty in preparing a case and could not fairly represent a class. The dispute as to security conditions in the jail, moreover, is not one capable of repetition, yet evading review. See *Dunn v. Blumstein,* 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). This issue may be properly litigated by persons presently subjected to the conditions in question.

■ In short, plaintiffs' individual claims are mooted by their transfer to other facilities and they do not present a case for class certification. Accordingly, the action must be dismissed. The Court's disposition of the matter makes it unnecessary to reach the immunity and other defenses raised by individual defendants.

An appropriate order will issue.

---

1. Plaintiffs' allegations are to the effect that 64 inmates are housed in one dormitory. While this is not denied, defendants have filed an affidavit, uncontroverted, to the effect that beds are at least two and one half feet apart, and that shower facilities are available for use of the inmates as frequently as they wish.