James O'BRYAN, Duane Wilbert, Isaac Mc Kinley, Thomas Dorsey, John Phillips, Earl Mc Claren, Dale Falk, Thomas Jackson and James Brotzman, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

The COUNTY OF SAGINAW, MICHIGAN, James F. Halm, Carl A. Roggow, Rene C. De Sander, Ralph J. Frahm, Ralph K. Iwen, Pamela Sommerfeld, Marie E. Davis, Ed Thomas, Frank J. Paskiewicz, Norman E. Howell, Robert Alfred Gage, Paul L. Gustafson, Robert C. Pressprich, John M. Ryan, Benjamin L. Schrader, Individually and as Members of the Saginaw County Board of Commissioner, Dorothy Kovaleski, Individually and as Saginaw County Auditor, Robert E. Loubert, Individually and as Sheriff of Saginaw County, Lawrence Cox, Individually and as Deputy Sheriff of Saginaw County, Defendants.

Civ. A. No. 75–10075.

United States District Court, E. D. Michigan, N. D.

Sept. 14, 1977.

Lawrence F. Gambino, Phillip L. Snelling, Alan S. Ells, Legal Services of Eastern Michigan, Saginaw, Mich., Delores Coulter, Legal Services of Eastern Michigan, Flint, Mich., Alan Houseman, Legal Services of Eastern Michigan, Detroit, Mich., for plaintiffs.

William S. Bovill, David B. Meyer, Jerome E. Burns, William E. Jungerheld, Saginaw, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This action is brought by plaintiffs on behalf of themselves and all others similarly situated challenging the constitutionality of certain alleged practices and procedures affecting inmates in the Saginaw County Jail. Plaintiffs originally requested declaratory and injunctive relief and damages, and the Court determined that the action could proceed as a class action pursuant to F.R.Civ.P. 23(c)(1) on behalf of all persons who have been, are, or will be confined in the Saginaw County Jail. By a Memorandum Opinion and Order dated June 20, 1977, the damage claims as to the named plaintiffs were dismissed on their motion pursuant to F.R.Civ.P. 41(a)(2) and the class nature of this action was modified to proceed pursuant to F.R.Civ.P. 23(b)(2) on the claims for declaratory and injunctive relief only.

This action is concerned with particular alleged practices and procedures as opposed to general physical conditions. The Complaint contains nine claims on which plaintiffs seek relief. The first claim is that alleged use of the "hole," the lack of recreation and exercise, the restrictive visitation, communication, and association privileges, the lack of adequate ventilation in the windowless sections of the jail, and the alleged lack of custodial care constitute cruel and unusual punishment and a denial of due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The second claim for relief alleges that inmates have inadequate access to legal material. The third claim involves

the alleged censorship of inmate mail and the alleged lack of access to telephones, mailing, writing and reading materials, as well as restrictive visitation privileges, which are alleged to be a violation of the right to free speech and association as guaranteed by the First and Fourteenth Amendments of the United States Constitution. The Fourth claim challenges the visitation procedures, asserting that inmates have a Constitutional right to contact visitation. The fifth claim challenges the disciplinary procedures. The remaining claims seek separation of juvenile inmates from adult inmates and the posting of the jail's regulations. An equal protection claim is also stated on behalf of persons held prior to trial because of their inability to supply bail.

By order dated May 23, 1977, partial summary judgment was granted in favor of plaintiffs. In said ruling, a final disposition was made of the following claims for relief in the following manner with defendants being permanently enjoined from failing to provide the same, to wit:

I. Defendants shall provide two free letters per week for pretrial inmates unable to purchase the necessary stamps, paper, envelopes and pens; one of the aforementioned letters shall be provided for personal correspondence and the other letter shall be for legal correspondence. Inability to purchase shall be defined as an inmate commissary account that has an average two-week balance of under two dollars ($2.00), provided that no inmate without funds shall be required to wait a two-week period to obtain the necessary stamps, paper and envelopes.

II. All disciplinary actions taken in the Saginaw County Jail shall be done in conformance with the following procedures prior to punishment:

a) Minor rule violations:

1. A hearing officer shall be designated for each shift from command officers.

2. A report alleging a rule violation will be filed with the hearing officer by the complaining party.

3. Such hearing officer will investigate each reported violation by speaking with the complaining party and the party complained of and any other persons necessary.

4. The hearing officer shall evaluate the evidence and make a finding as to whether a violation has occurred and the type of punishment to be given and note the same in a written report.

5. In no case will a guard be allowed to summarily punish an inmate.

6. In those cases where the hearing officer is a complaining party or witness, a different hearing officer shall be appointed to determine the case.

7. A written list of possible minor violations and punishments shall be established (i.e., loss of T.V., commissary or recreation for up to forty-eight (48) hours) and distributed to inmates and staff.

b) Serious rule violations:

1. A hearing board shall be created consisting of a captain or his designate in the Sheriff's Department and one non-jail staff person, such as a representative from the inmate school staff, selected by the Sheriff, to hear evidence of the rule violation and determine punishment if merited.

2. Procedure to be followed prior to infliction of any punishment:

(a) written notice of alleged rule violation.

(b) hearing before board.

(c) right to present witnesses and confront accusers.

(d) if inmate is not mentally competent to defend him or herself or issues are complex, a non-attorney representative may assist who is appointed by a non-staff hearing officer.

(e) a written report of the hearing decision and evidence relied on by board.

3. A written listing of violations and punishments shall be established (i.e., placement in single cells, loss of good time, any restriction of privileges over forty-eight (48) hours).

c) Emergency situations:

588

1. In emergency situations where the safety of persons or security of the jail is in jeopardy, such as fights between inmates, an inmate may be placed in single cell immediately but the appropriate hearing procedure shall be followed within twenty-four (24) hours, except upon weekends when hearing may be postponed until Monday.

d) The use of physical force as a means of discipline is prohibited. There shall be no discipline of an entire group of inmates unless it is determined that all inmates to be disciplined participated in the rule violation; (i.e., T.V. privileges). The removal of clothing shall not be used as a punishment. The discipline used shall be reasonably related to the rule violation and the circumstances surrounding the violation. Visitation and mail privileges shall not be suspended as punishments except in cases where those respective privileges were abused. An accurate, complete log book shall be kept of all discipline indicating date, name, conduct, rule violated, procedures, findings and punishment, if any.

e) The type of offenses for which inmates will be prosecuted in state or federal court shall be identified in a written listing; inmates charged with one of these offenses shall be advised that they have a right to remain silent; that anything he says can and may be used against him at a subsequent trial; that he has the right to counsel; that, if he cannot afford counsel, one will be appointed for him at no expense to him for defense of any action filed against him in a court of law.

III. All inmates unable to afford a toothbrush and toothpaste shall be furnished these items free on entry to the jail or at such later date as they become unable to afford them. Inability to purchase shall be defined as an inmate commissary account that has a two-week average balance of under two dollars ($2.00), provided that no inmate without funds shall be required to wait a two-week period to obtain the toothpaste and toothbrush.

IV. All inmates on entry to the jail shall be provided with socks, sheets, and a clean blanket.

V. An Inmate Guide shall be drafted by the Sheriff of Saginaw County to include a comprehensive list of rights and privileges of inmates specifically described to prevent inconsistent application, arbitrariness and favoritism in implementation. The Guide shall be published upon final resolution of the controversy in this action.

a) The Inmate Guide shall include:

1. An explanation of all programs, work opportunities and services available to inmates; and the method of selection, program capacity and manner of application;

2. The disciplinary rules and regulations of the jail providing for specifically listed offenses, penalties and disciplinary procedures;

3. Procedural rules for the filing, hearing and consideration of inmates' complaints and grievances;

4. Procedural rules for presentation of inmate medical requests;

5. Rules for visitation by family, friends, clergymen and attorneys;

6. Rules regarding mail procedure.

b) Said Inmate Guide, upon approval of the court, is to be published in English and Spanish, publicly posted in the jail, distributed to all present inmates and each new inmate upon admittance, made available to attorneys, friends and family of inmates and revised and republished regularly.

VI. Each inmate shall be provided with his or her own street clothes for any or all court appearances whenever such is so requested by the inmate. Nothing in this provision requires street clothing to be purchased for or furnished to an inmate at the expense of any of the defendants.

In addition to a final disposition of the above matters, the Court entered summary judgment on a portion of the following claims for relief and enjoined the defendants from failing to provide the same to the following extent, to wit:

I. An exercise and recreation program shall be established whereby each inmate shall receive two hours of indoor or outdoor

exercise and/or recreation per week. The Defendants shall purchase such equipment as is determined by the Saginaw County Sheriff to be necessary to carry out this program.

II. All inmates shall be permitted to receive newspapers, magazines, books and other types of publications which are legally available to the public generally. Such publications shall be mailed directly from the publisher and shall be paid by the inmate who receives the same.

a) Inmates shall not accumulate more than four magazines and a reasonable number of books in their cells at one time. Newspapers will be disposed of daily.

b) Any inmate receiving subscription magazines or newspapers shall terminate delivery before leaving the jail or have the materials kept by the jail and placed in general library circulation.

III. The jail shall establish and keep updated a limited law reference library composed of one set of the following: *Gillespie's Michigan Criminal Law and Procedure with Forms*, the Constitutions for the State of Michigan and the United States, the Penal Codes and Criminal Procedure Volumes for the State of Michigan and a Law Dictionary. These volumes shall be a part of the general library now available to the inmates.

IV. Religious services shall be available to all inmates on a weekly basis as they presently exist in the Saginaw County Jail.

The Court found on the remainder of plaintiffs' motion for partial summary judgment that there were unresolved issues as to what relief was appropriate but that many of the facts on which the motion was based existed without substantial controversy. Accordingly, plaintiffs' declaratory relief on these issues was not granted on their motion but the Court entered an order designating the facts which were not substantially controverted pursuant to F.R. Civ.P. 56(d). To facilitate review, these findings will be restated under the Court's findings of fact followed by the notation of F.R.Civ.P. 56(d).

After consolidation of plaintiffs' application for a preliminary injunction with a trial on the merits, the remaining issues were heard by the Court. Following the testimony of the witnesses and the receipt of all evidence, the Court toured the Saginaw County Jail on June 8, 1977.

Pursuant to F.R.Civ.P. 52(a), the Court hereby enters its findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Saginaw County Jail is a two-story structure opened in approximately 1972. The inmate detention area is located on the second floor and is windowless, unlike the first floor. An air conditioning system for the second floor became operational in May of 1976. The first floor where the offices of the Saginaw County Sheriff's Department are located was already air conditioned at the time the instant action was filed. (F.R.Civ.P. 56(d)).

2. The average daily inmate population of the Saginaw County Jail is approximately 170. The inmate population of the jail consists of pretrial detainees, presentencing inmates and sentenced inmates serving time in the jail for misdemeanors or awaiting transfer to other institutions. During July of 1976, 75% of the inmates were either pretrial detainees or presentencing inmates. (F.R.Civ.P. 56(d)).

3. The Saginaw County Jail is operated as a maximum security institution. The persons confined in the jail, however, include both those held on high bond or on non-bondable offenses, and those held for very short periods of time ranging from a few hours to several days. As a result of the rapid turnover among the latter portion, the average length of stay is 7.7 days.

4. In 1975 approximately 8,000 persons were processed through the Saginaw County Jail. (F.R.Civ.P. 56(d)).

5. There is no comprehensive formal classification system for prisoners in the Saginaw County Jail. Prisoners are informally classified on the basis of age, size, previous jail experience, and peculiar physi-

cal problems. The jail tries for a balance of young people with older people in any particular cell except that inmates under the age of 17 years are not placed in the same cells as adults.

6. Pretrial detainees and convicted inmates are comingled in their cell assignments in the Saginaw County Jail. Such inmates are housed together and exposed to the same conditions of confinement. Juvenile inmates under 17 years of age are confined in cells where they can hear, see, and talk with adult inmates. The Saginaw County Jail has no written classification procedure for inmates in the jail outside of separating male and female inmates and the juvenile policy referred to above. (F.R. Civ.P. 56(d)).

7. Housing of youths where such can see, hear, and talk to adult inmates is inherently harmful to many juveniles. This potential for harm is aggravated by the fact that a large portion of the daily population in the Saginaw County Jail is incarcerated for high bond or non-bondable offenses.

8. Nationally established jail standards require special cell assignments for suicidal, emotionally or mentally disturbed and addicted or alcoholic inmates, as such require special treatment and close supervision.

9. Implementation of a comprehensive inmate classification system is essential to the proper administration of the Saginaw County Jail.

10. The floor plan of the inmate detention area is such that visual observation into all of the cell areas is not possible from either the guard station or from the hallways in front of the cell sections. While the jail does possess television monitoring equipment, the only cells with camera monitoring are three single cells and these cameras cannot be made to work due to insufficient lighting. There is a working television monitor on the roof exercise area. The inmate cell sections, each of which contain several single or multi-person cells, are behind steel doors. The only effective method by which inmates can summon guards is by rattling their cell doors or hollering. According to the current rules posted in the Saginaw County Jail, rattling bars is now a prohibited activity. (F.R.Civ.P. 56(d)).

11. The absence of any effective system for summoning guards by inmates presents a danger to the security of the jail and to the safety of inmates.

12. Inmates are not given a medical examination upon entry into the jail. Inmates who are drug addicts or alcoholics may go through withdrawal without treatment. (F.R.Civ.P. 56(d)).

13. The Saginaw County Jail maintains on its staff a male nurse who is able to provide limited medical assistance to inmates until they can be seen by a physician. The County also has on its staff a part-time physician and a dentist who visits the jail on a weekly basis.

14. The Saginaw County Jail has within its physical facility an infirmary and both a dental and medical examination room.

15. The actual intake health screening procedure used by the Saginaw County Jail consists of six questions listed on the jail inmate record which inquire as to any known physical problems and as to whether the inmate is under a doctor's care or is receiving any prescription drugs. This questionnaire does not result in an adequate medical history. In addition, laboratory tests and a basic physical examination are required both to protect the health of the individual inmate and to prevent the spread of communicable diseases within the prison.

The defendants are in the process of modifying the present medical intake procedures but have not submitted their final plan for such to the court.

16. In the mid-1960's there was a serious outbreak of a contagious disease or illness in the former Saginaw County Jail facility.

Under the medical intake procedures currently used, there has been no actual outbreak of any serious contagious disease within the Saginaw County Jail since the present jail facility became operational in 1972.

17. An inmate is generally allowed no physical contact with his visitors. The jail

visitation rules allow an inmate to have visits from immediate family only and bar any children under 16 years of age. Only if an inmate does not have any family in the area will friends be allowed to visit. An inmate is allowed visits one night per week, on either Tuesday or Wednesday depending upon alphabetical listing, from 6:30–8:30 p. m. for fifteen minutes per visit. Visits are conducted on the second floor with the inmate in a visiting booth at the end of his cell section and the visitor standing out in the hall corridor. There is a brick and glass partition between inmate and visitor with communication conducted through a phone. The phones did not work on August 30, 1976, although Sheriff Kelly stated that necessary parts were on order.

The current weekly visitation rule has been in effect since November of 1975. The jail visitation policy prior to November, 1975 allowed an inmate to have visitors once every two weeks. (F.R.Civ.P. 56(d)).

18. When the Court toured the jail facility on June 8, 1977, the Court tested each of the phones in one cell block to determine whether visitors could use them to communicate with prisoners through the brick and glass partition. Each phone tested was inoperable.

19. Contact visitation with members of the clergy and for religious counselling are permitted. Under exceptional circumstances, an inmate may be allowed contact visitation with family members upon such being recommended by a member of the clergy. In such cases, the Sheriff determines whether contact visitation will be allowed. There are no written standards regarding such, and the Sheriff relies upon the expertise of the person recommending the visit.

20. The Saginaw County Jail has no facilities for other than limited contact visitation at the present and, if general contact visitation were ordered, it would require some structural modifications within the Saginaw County Jail. These structural changes could possibly be kept to a minimum by converting the area presently used for visitation. Neither party has submitted a plan to the Court as to how such modifications could or should be accomplished.

21. The use of contact visitation creates administrative and security problems, the primary problems being the possibility of drugs and contraband entering the jail. The greatest such risks come from things entering the jail through mouth to mouth contact. The other risks are minimal and can be eliminated through proper security measures.

22. Contact visitation is highly beneficial to inmates. It contributes to their psychological and emotional health and outlook and helps them maintain their personal ties to persons outside the prison environment.

23. The present policy of the Saginaw County Jail is to allow inmates of the jail to make a telephone call when they come back from court appearances and when they first enter the jail. In addition, inmate guards have made telephone calls to attorneys and other individuals upon request by inmates.

There is no allowance made for additional telephone use by inmates who do not receive visitors.

24. Regular access to telephones is necessary for inmates to maintain family and community contacts and to assist the pretrial detainee in preparation of his or her defense. Telephone use becomes of even greater significance when the inmate is unable to maintain contact with those outside the prison through regular direct visitation.

25. The Saginaw County Jail does not possess any indoor exercise facilities.

26. Prior to the grant of partial summary judgment in favor of plaintiffs, inmates were not allowed out of their cells for exercise other than for 15 minute periods of exercise on the jail roof at infrequent intervals, except that inmates in single cells were allowed out of their cells onto the catwalk in front of their cells part of each day.

The roof area of the Saginaw County Jail is not enclosed so that use of the roof area for exercise purposes is totally dependent on the weather and on staff availability. As a result, inmates were able to exercise

on the roof no more than 15 minutes once a week and frequently only once per month during the warm months and not at all during the rest of the year.

Except for the above mentioned exercise on the roof area, inmates in multi-person cells were locked in their cells all day except for infrequent events such as going to a court hearing or to see the doctor. (F.R. Civ.P. 56(d)).

27. There are few recreational activities for inmates of the Saginaw County Jail. No recreational games are provided to inmates, although inmates with resources can buy cards or chess and checkers. The jail does have a small school program, but it can accommodate only 7–11% of the inmates at one time. The budget for the school program was cut from $80,000.00 to $30,700.00 for the present year. (F.R.Civ.P. 56(d)).

28. Inmates are able to have one television set per cell provided that they are able to obtain such televisions through their own resources. The Saginaw County Jail does not provide inmates with television equipment.

29. The opportunity for frequent exercise and recreation, in addition to sufficient means for diversion, are essential for the mental, physical, and emotional well being of inmates who are confined for extended periods within a jail facility.

30. The Sheriff of Saginaw County has proposed an exercise program which would provide each inmate with a minimum of two hours of exercise, including recreation, per week. This offer was implemented by the grant of partial summary judgment in favor of plaintiffs.

31. A calisthenic exercise program which inmates would be able to perform within their cells for a minimum of one-half hour per day together with the opportunity for more extended recreation and exercise on the roof area when the weather so permits would provide inmates with sufficient opportunity to obtain the necessary exercise.

Although defendants have indicated a willingness to implement such a calisthenic exercise program, they have not submitted a final plan for such to the Court.

32. Defendants recently adopted a mail policy in the inmate regulations pamphlet. (F.R.Civ.P. 56(d)).

33. Inmates cannot be brought books, magazines or toiletries by visitors. Non-legal inmate mail is not opened in the presence of inmate addressees. (F.R.Civ.P. 56(d)).

34. Permitting inmates to receive reading material from persons bringing it to the jail or through the mail from sources other than a publisher will not endanger the security of the jail or its administrative efficiency if appropriate procedures are followed.

Appropriate procedures in such a case would be that the reading material be first examined by officers of the Sheriff's Department before such is allowed to be placed in the possession of an inmate.

35. The Saginaw County Jail does not censor inmate mail but only opens non-legal mail and inspects the same for contraband prior to delivering it to inmates. This procedure increases inmate suspicion of guards but also allows the guards a more adequate opportunity to examine the mail than would be the case if all letters were opened in the presence of the inmate addressee.

36. To attend religious services in the jail chapel, inmates must have a bail bond amount of $5,000.00 or less. The jail chapel is not used for any other inmate purposes. (F.R.Civ.P. 56(d)).

37. The jail chapel contains 32 seats for inmates. Ten additional seats could be installed, but such has not been done because of the difficulty of transporting inmates to and from the chapel and because the larger number of inmates within one room creates a proportionately greater security risk. This security risk can be minimized by bolting the chairs in the chapel to the floor.

38. The present restrictions on attendance of religious services do not take into account the religious needs of the individual inmates. The inmates who are excluded by reason of their bond being in excess of

$5,000 are just as likely or more likely to be in need of such services than those who are actually allowed to attend religious services.

The jail has attempted to accommodate the religious needs of all inmates by encouraging clergy to visit personally with inmates.

39. The present religious services in the Saginaw County Jail last for a period of one and one-half hours per service. Such services could as easily be for a shorter period in order to increase inmate participation.

40. Implementation of an adequate classification system would permit participation by those inmates desiring to attend religious services in the jail chapel without the need for an arbitrary bond amount limiting those who may attend.

41. There are no padded cells in the Saginaw County Jail despite reference to such cells in the Saginaw County Jail Administration Rules and Regulations Manual issued by the Sheriff. (F.R.Civ.P. 56(d)).

42. The jail contains two single cells on the first floor, known as "incorrigible cells", which contain a cement slab to lie on and a hole in the floor to be used for toilet purposes. This toilet hole, or so-called "Chinese toilet", can be flushed only from outside the cell. The individual cells are behind double steel doors and contain no wash basin, drinking facilities, sheets, mattress, blanket, toilet paper or towels. Inmates are occasionally stripped completely naked and put in these incorrigible cells. (F.R. Civ.P. 56(d)).

In the grant of partial summary judgment to plaintiffs, defendants were prohibited from removing clothing for purposes of punishment.

43. Incarceration within an incorrigible cell would be highly dangerous for a person with suicidal tendencies.

44. Under the present practices within the Saginaw County Jail, inmates are not placed in incorrigible cells for punishment but are so placed only when the inmate engages in destructive and uncontrollable behavior. Inmates placed in an incorrigible cell remain there no longer than 24 hours, are checked three times an hour, and receive food and any necessary medication.

45. The use of incorrigible cells to control individuals who are engaging in uncontrollable and destructive behavior is essential to jail administration and provides an effective means of protecting the safety of the inmate, provided that such inmates are properly cared for and supervised while in such cells. Inmates are properly cared for and supervised in the Saginaw County Jail when placed in an incorrigible cell.

46. The effect on the inmate of being placed in an incorrigible cell is punitive, regardless of the actual purpose for placing the inmate in such a cell, as there is an emotional, physical and psychological impact upon prisoners confined in an isolation cell which does not provide basic amenities.

47. No room has been set aside for legal research by inmates in the Saginaw County Jail. Counsel are also not provided for inmates who wish to challenge the conditions of confinement.

48. Inmates require the assistance of counsel or access to a law library research room in order to be able to properly bring their grievances before the courts.

49. There is no established grievance procedure whereby dissatisfied inmates would have the opportunity to bring their complaints to the jail administrators prior to resort to the courts.

50. An impartial grievance procedure increases communication between inmates and jail staff and encourages informal resolution of disputes without requiring the persons involved to assume adversary positions in the judicial process.

51. There has been no evidence of malicious or intentionally wanton deprivation of any constitutional rights of inmates. Rather, defendants have attempted to show a genuine concern for such. However, as is set forth more fully in the Court's conclusions of law, the practices and procedures have violated constitutional guarantees. While these violations are attributable to staff and budget limitations, and to the structural arrangement of the present jail,

these limitations did cause defendants to intentionally curtail certain rights in what would otherwise be a commendable effort to provide maximum security in the most efficient manner possible.

52. The relief plaintiffs are seeking will not endanger jail security or administration if appropriate and nationally recognized procedures for jail administration are implemented in the Saginaw County Jail.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties in this action and of the subject matter of this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and 28 U.S.C. 1331 and the Fourteenth Amendment of the United States Constitution.

2. At one time, it was the policy of federal courts to avoid interference with the administration of state prisons. However, within recent years, the traditional "hands off" policy has yielded to increasing judicial scrutiny in response to increased litigation by prisoners in an effort to improve the conditions of their confinement. The position taken by the federal courts is now that stated by the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396, 405–406, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224, 236 (1974):

"[A] policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."

3. The more difficult question is the extent to which constitutional guarantees are implicated by the practices and procedures in the Saginaw County Jail. In making such a determination, the Court does not attempt to determine what practices it would or would not implement if it were acting as an administrator. Instead, the search is for minimal standards below which prison administrators may not act.

■ These minimal standards are arrived at by balancing two considerations. The first consideration is the deference to be given to the decisions of prison administrators and the recognition which is required of the peculiar and restrictive circumstances of penal confinement. As the Supreme Court has recently stated in *Jones v. North Carolina Prisoners' Labor Union*, —— U.S. ——, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977):

"[T]his Court has long recognized that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'. *Price v. Johnston*, 334 U.S. 266, 285 [68 S.Ct. 1049, 92 L.Ed. 1356] (1948); see also *Pell v. Procunier*, 417 U.S. 817, 822 [94 S.Ct. 2800, 41 L.Ed.2d 495] (1974); *Wolff v. McDonnell*, 418 U.S. 539, 555 [94 S.Ct 2963, 41 L.Ed.2d 935] (1974). The facts of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."

■ The second consideration is that administrative considerations must be limited to only the legitimate objectives of incarceration. In *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 501 (1974), the Supreme Court noted a corollary of the withdrawal of rights by imprisonment is that:

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ."

■ 4. A majority of the inmates in the Saginaw County Jail at any one time are pretrial detainees who are incarcerated only because they are unable to post the necessary bond which would entitle them to release. For these inmates, punishment is never a legitimate penological objective.

The presumption of innocence precludes punishment until such time as an individual is convicted of a crime.

■ The only legitimate objective of incarceration of those who are held because of their inability to post bond is the objective of assuring their presence at trial. Thus, insofar as pretrial detainees are concerned, the rule is that they may not be subjected to any deprivations or restrictions of their rights beyond those necessary to assure their presence at trial applying the least restrictive means test of the Fourteenth Amendment. *Jones v. Wittenberg*, 323 F.Supp. 93, 99 and 330 F.Supp. 707 (ND Ohio, 1971); *aff'd sub nom. Jones v. Metzger*, 456 F.2d 854 (CA 6, 1972). This standard is set forth by the Court in *Detainees of the Brooklyn House of Detention v. Malcolm*, 520 F.2d 392, 397 (CA 2, 1975), wherein the Second Circuit stated:

"Here we are concerned only with the confinement of pretrial detainees and not convicted inmates. The difference between these two categories and the necessity for different treatment have been frequently emphasized. Pretrial detainees are no more than defendants waiting for trial, entitled to the presumption of innocence, a speedy trial and all the rights of bailees and other ordinary citizens except those necessary to assure their presence at trial and the security of the prison. In providing for their detention, correctional institutions must be more than mere depositories for human baggage and any deprivation or restriction of the detainees' rights beyond those which are necessary for confinement alone, must be justified by a compelling necessity."

■ 5. As punishment is not a legitimate objective of incarceration of pretrial detainees, any state action which restricts a protected liberty interest and which is not required either to maintain security as to all inmates or to assure the particular inmate's presence at trial necessarily violates the guarantee of the Fourteenth Amendment that no person shall be deprived of liberty without due process of law. *Rhem v. Malcolm*, 507 F.2d 333, 337 (CA 2, 1974); *Brenneman v. Madigan*, 343 F.Supp. 128 (ND Cal., 1972).

■ As the restraints imposed on pretrial detainees must be circumscribed to include only those which are absolutely necessary, the state bears the burden of justification in curtailing personal liberties. *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676, 686 (D Mass., 1973), *aff'd* 494 F.2d 1196 (CA 1, 1974); *Brenneman v. Madigan, supra*, 343 F.Supp. at 138.

■ 6. Defendants have suggested that budgetary considerations and the rapid turnover of inmates within the Saginaw County Jail warrant the imposition of lower standards that those recognized and followed in institutions which incarcerate defendants who have been convicted of a crime. However, neither the fact that budgetary changes may be necessary or that minor structural alterations may be required can operate to excuse the violation of constitutional guarantees. *Jones v. Metzger*, 456 F.2d 854 (CA 6, 1972); *Detainees of the Brooklyn House of Detention v. Malcolm, supra*, 520 F.2d at 399. That such can not be avoided because of local conditions is constitutionally mandated. The Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause both prohibit the confinement of pretrial detainees under conditions which are worse than those of convicted prisoners. *Rhem v. Malcolm, supra*.

■ 7. The corollary of the principle that punishment is not a legitimate objective in the incarceration of pretrial detainees is that punishment is a necessary incident of incarceration for those who have been convicted of an offense and incarcerated for such. Accordingly, punishment *per se* is not prohibited for convicted inmates. Rather, it is only cruel and unusual punishment or punishment which is inflicted without procedural due process or in violation of the guarantee of the equal protection clause which is forbidden. U.S.Const. Am. VIII, XIV.

In *Ingraham v. Wright*, 430 U.S. 651, 669, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711, 729 (1977), the Supreme Court stated in regards to punishment of persons incarcerated after conviction:

"The prisoner's conviction entitles the State to classify him as a 'criminal', and his incarceration deprives him of the freedom 'to be with family and friends and to form the other enduring attachments of normal life.' [T]he protection afforded by the Eighth Amendment is limited. After incarceration, only the 'unnecessary and wanton infliction of pain,' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (citations omitted).

■ 8. In determining whether the conditions of confinement of convicted persons constitute cruel and unusual punishment, the Courts have increasingly viewed the effect of the incarceration on the individual. Prison conditions should not threaten a prisoner's sanity or physical or mental health, frustrate their efforts at rehabilitation, or increase the probability of their future incarceration. This emergent right is based not only on the interests of the inmate but on society's interest in reducing recidivism as well. See *Laaman v. Helgemoe*, 437 F.Supp. 269 (DC N.H., 1977).

9. Although one quarter of the inmates in the Saginaw County Jail have been convicted of an offense for which they are being incarcerated, the jail has not chosen to distinguish between these inmates and those awaiting trial or sentence. Instead, the convicted and the presumed innocent have been co-mingled in their cell assignments.

■ Where pretrial detainees and convicted persons are co-mingled in their cell assignments, the Constitutional common denominator must be the rights of the presumed innocent. Accordingly, a showing of a total picture of confinement which constitutes a deprivation of due process for the pretrial detainees and which cannot be remedied except by changes which will affect the convicted and detainees alike will necessitate relief for both groups. *Bay County*

*Jail Inmates v. Bay County Board of Commissioners*, Civil No. 74–10056 (ED Mich., 8/29/74).

10. As the population of the Saginaw County Jail is highly divergent, a system of classification of the inmates is essential. The classification system serves two purposes. First, it allows jail administrators to take into consideration the various individual needs of particular inmates, based on their age, prior criminal experience, and particular emotional, physical, medical, psychological, and religious requirements. Secondly, it allows jail administrators to apply tighter security standards to those who require such without the necessary application of such to all inmates. Relevant considerations are prior criminal record, the offense for which the individual is charged or convicted, the amount of bond, and the individual's age, present condition, and past institutional behavior. The primary distinction in classification must be between those who are detainees awaiting trial and those who have been convicted of a crime and sentenced to incarceration.

■ Institution of a carefully developed classification procedure to determine those inmates in need of special treatment and those requiring tighter security is constitutionally required under the least restrictive means test to preserve the rights of those pretrial detainees who can be held under less restraint than maximum security custody. *Hamilton v. Love*, 328 F.Supp. 1182, 1191 (ED Ark. 1971); *Rhem v. Malcolm*, 396 F.Supp. 1195 (SD N.Y., 1975), *aff'd.* 527 F.2d 1041 (CA 2, 1975).

Rather than setting forth the classification system that defendants shall follow, the Court will allow defendants thirty days from the date of this Memorandum Opinion and Order to submit a proposed classification system to the Court. See *Rhem v. Malcolm, supra*, 527 F.2d at 1043.

■ 11. There is no *per se* Constitutional requirement which requires that juveniles be housed where they cannot see, hear, or talk to adult inmates. Rather, age is one factor to be considered in a classifica-

tion system, and consistent with the constitutional requirements of least restrictive means, the harm which can occur to youthful pretrial detainees by association with adult inmates must be obviated to the extent possible.

There has been no showing of actual harm to any juvenile from the present housing arrangement, whereby persons under the age of 17 are housed in the same jail but in separate cells from adults. The potential for harmful contact can be minimized through classification whereby juvenile inmates would be housed in cells adjacent to slightly older inmates only.

This is one factor which defendants shall consider in determining the nature of their proposed classification system.

 12. Under the doctrine of pendent jurisdiction, this Court has jurisdiction to enforce state claims which are derived from a "common nucleus of operative fact." *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As a pendent claim in this lawsuit, plaintiffs claim that Michigan law requires the separate housing of juveniles.

There are two conflicting or apparently conflicting statutes on this issue. M.C.L.A. § 712A.16(2), enacted by 1939 P.A. 288, effective March 6, 1944, provides implicitly that no child under the age of 17 years may be confined with adults. The specific statutory provision, as amended by 1968 P.A. 150, provides:

"The Court or a court approved agency may arrange for the boarding of such children, . . . or may use a room or ward, separate and apart from adult criminals, in the county jail in cases of children over 17 years of age within the jurisdiction of the court."

M.C.L.A. § 712A.16(2) is part of the Michigan Probate Code regarding the Juvenile Division of the Probate Court. Consistent with M.C.L.A. § 712A.16(2) is M.C.L.A. § 712A.18(2), which authorizes jail confinement only for children over the age of 17 years.

The second statutory provision is M.C. L.A. § 722.553, as enacted by 1881 P.A. 260, effective September 10, 1881, which provides:

"No child under 16 years of age held for trial, or on conviction in any jail or other place of confinement, shall be placed or allowed to remain in the same cell or room in company with adult prisoners. It shall be the duty of the officer in charge of such place of confinement, to secure as far as the construction of such place will admit, the exclusion of such children from the society of such adult prisoners during their confinement."

It is clear that the statute just quoted allows for the incarceration of juveniles within the same jail facility as adult inmates. It is only the Juvenile Code which implicitly prohibits such for children under 17 years of age. As the Juvenile Code was enacted subsequent to the original statute, the issue is whether such implicitly repeals or modifies M.C.L.A. § 722.553.

 It is well established in Michigan jurisprudence that if the legislature intends to alter or amend an act, the section or sections so altered or amended must be re-enacted and published at length. Const. 1963, Article 4, § 25; Const.1908, Article 5, § 21. Likewise, the Michigan Supreme Court has specifically ruled that one statute cannot be amended by a second statute unless both are republished. *Alan v. Wayne County*, 388 Mich. 210, 285, 200 N.W.2d 628, *reh. den.* 388 Mich. 626, 202 N.W.2d 277 (1972). As there has been no such republication, M.C.L.A. § 722.553 retains its validity. The statutes must be construed together to require only that juveniles under the age of 17 years who are under the jurisdiction of the Juvenile Division of the Probate Court may not be confined in a jail that also houses adults.

As there has been no evidence presented that the Saginaw County Jail houses individuals under 17 years of age who are under the jurisdiction of the Juvenile Division of the Probate Court, the Court finds that there has been no violation of state law.

■ 13. Consistent with the inmates' right to physical security and the least restrictive means test, an effective method for summoning guards must be devised and implemented. Rather than determining initially what such method shall be, the Court will allow defendants thirty days from the date of this Memorandum Opinion and Order to submit a plan for such to the Court.

■ 14. A physical examination which is sufficient to protect the health of the inmate and of the jail population in general must be administered to each inmate as a part of the admission process. *Alberti v. Sheriff of Harris County*, 406 F.Supp. 649, 677 (SD Tex., 1975). This physical must be given prior to admission into the general population of the jail and as a part of the classification process.

Defendants have proposed a plan for such which would utilize the existing facilities and the services of the jail nurse.

The plan so devised would appear to meet these constitutional standards, but it would be premature for the Court to so rule as such plan has never been finalized but is only in the process of being devised. Accordingly, the Court will allow defendants thirty days from the date of this Memorandum Opinion and Order to submit their completed plan to the Court.

■ 15. A drug and alcohol withdrawal treatment program must be instituted in order to screen out individuals with those problems on their admission to the jail and to house them in a separate environment designed to treat withdrawal problems. *Alberti v. Sheriff of Harris County, supra*, 406 F.Supp. at 677. Again, the Court will allow defendants thirty days to devise and to submit such plan to the Court.

16. The most fully litigated issue in this lawsuit is the issue of whether inmates are entitled to contact visitation with their visitors. It has been defendants' position that such creates security and administrative problems which outweigh any right to contact visitation which inmates may have. As set forth in the Court's findings of fact, the present visiting arrangement consists of the inmate and visitor standing across from each other while separated by a brick wall, with the two viewing each other through a glass window and communicating by means of a telephone.

This same visitation arrangement was considered at length in the opinion of this Court in *Bay County Jail Inmates v. Bay County Board of Commissioners*, Civil No. 74–10056 (ED Mich., 8/29/74), at pp. 17–19, and was found to be constitutionally inadequate. See *Rhem v. Malcolm*, 371 F.Supp. 594, 601 (SD N.Y., 1974); *Berch v. Stahl*, 373 F.Supp. 412 (WD N.C., 1974).

■ The right to contact visitation is inherent in the least restrictive means test which must be applied to pretrial detainees. As this Court recognized in the *Bay County Jail Inmates* case, the general rule is that a pretrial detainee should be able to visit with whomever he or she pleases in the most conducive setting possible for substantial periods each week. *Jones v. Wittenberg, supra*, 330 F.Supp. at 717. This right takes on increased meaning where visitation with family members is involved. Family relationships are closely protected by the United States Constitution. The family relationship involves a zone of privacy emanating from the recognition that such relationships are fundamental in our societal and political system.

■ Accordingly, the relationship is protected by the right of association as guaranteed by the First Amendment and is embodied in the concept of liberty as guaranteed by the due process clause of the Fourteenth Amendment. Any infringement on such rights are forbidden unless such infringement is necessitated by a compelling state interest. See *Mabra v. Schmidt*, 356 F.Supp. 620, 630–632 (WD Wis., 1973).

■ It is these considerations and the importance of visitation rights on an inmate's well being and prospects of rehabilitation which have led the Courts to conclude that denial of contact visitation to jail inmates is unconstitutional as a matter of law unless such is justified in a particular case by the need to preserve jail security or

discipline. *Detainees of the House of Brooklyn for Men v. Malcolm*, 421 F.Supp. 832 (ED N.Y., 1976); *Rehm v. Malcolm*, 527 F.2d 1041 (CA 2, 1975). A blanket denial of contact visitation is not justifiable. Rather, contact visitation may be denied only to those inmates who have been identified as a security risk. *Detainees of the House of Brooklyn for Men v. Malcolm, supra.* The criteria for determining inmates for whom contact visitation would be a security risk must be included in a classification system or contact visitation must be provided to all.

The situation in the Saginaw County Jail is even worse than that found to be constitutionally inadequate. Not only are inmates unable to have physical contact with their visitors but they are effectively precluded from voice contact with them, as well. The present visitation arrangement depends on the use of telephones which continuously are not functioning.

■ For these reasons, the Court finds that both the present visitation arrangements and the lack of contact visitation violate the Fourteenth Amendment of the United States Constitution.

As noted in the Court's findings of fact, minor structural changes in the existing visitation facilities will be required to implement contact visitation. The Court will defer initially as to what modifications should be made and will allow defendants thirty days from the date of this Memorandum Opinion and Order to submit their proposal for such to the Court.

■ 17. As previously stated, pretrial detainees are entitled to the additional right to visit with whomever he or she pleases for substantial periods and that all inmates are entitled to visit with family members, especially children, unless compelling reasons dictate otherwise. For these reasons, longer and more flexible visitation hours are required, the policy of allowing visits by immediate family members only shall no longer be followed, and children of inmates including those under the age of 16 years must be allowed to visit with their parents. The defendants shall implement

this relief immediately and shall set forth their efforts in implementing such within thirty days.

■ 18. Analogous to the right to visitation is the right to use of the telephone. For convicted persons or pretrial detainees alike, telephone use serves as a substitute for visitation where normal direct visitation is not possible. For pretrial detainees, telephone use is of additional importance in maintaining contact with his attorney in order to assist in the preparation of his defense.

The present policy allows an inmate a telephone call when he or she is first admitted and one upon returning from a court appearance. Additional calls may be placed by guards on behalf of an inmate upon request.

These limitations are impermissible as to pretrial detainees as such operate as a greater restriction on the detainee's rights than is warranted or necessary. Pretrial detainees may not be subjected to any hardship except those absolutely required for purposes of confinement only. There is nothing in the need to detain a prisoner pending trial that requires that he be substantially restricted in his ability to communicate by telephone. *Dillard v. Pitchess*, 399 F.Supp. 1225 (CD Cal., 1975).

■ The issue remaining is the amount of telephone time which should be allotted. The Court finds that if the present policy was supplemented by a policy allowing unlimited local calls for ten minutes a week per inmate and an additional ten minutes in lieu of personal visitation that such would be sufficient. *Bay County Jail Inmates v. Bay County Board of Commissioners*, supra at 19–20. Likewise, long distance collect calls should be allowed for the same periods. Defendants shall implement these policy changes immediately.

■ 19. The right of a prisoner to exercise has been recognized as fundamental. *Rhem v. Malcolm, supra*, 371 F.Supp. at 627. Confinement for long periods of time without the opportunity for regular exercise is a deprivation of due process as guaranteed by

the Fourteenth Amendment and cruel and unusual punishment as prohibited by the Eighth Amendment. *Rhem v. Malcolm, supra*, 371 F.Supp. at 627.

 The Court finds that the exercise program at the Saginaw County Jail has been inadequate. The proposed combination of calisthenics for a minimum of one-half hour per day together with the opportunity for more extensive outdoor exercise when weather so permits would not be constitutionally deficient if conscientiously administered. Accordingly, the Court will allow defendants thirty days to implement their proposal and to report on such to the Court.

 20. Prisoners retain substantial religious freedoms under the First and Fourteenth Amendments to the United States Constitution, and all persons who are incarcerated must be afforded reasonable opportunity to exercise their religious beliefs. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

 The rule in effect in the Saginaw County Jail restricting attendance at religious services to those persons with a bond of $5,000 or less is arbitrary and a denial of the right of free exercise of religion as guaranteed by the First and Fourteenth Amendments.

 Within thirty days of this Memorandum Opinion and Order defendants shall submit a proposal for providing the opportunity for religious services to all inmates. The same as with contact visitation, the right to attend religious services may be denied only to those inmates for whom such would create an unreasonable security risk.

 21. Pretrial detainees have an unqualified right to receive any publication which is legally available to members of the public generally; regardless of whether they receive such publications through the mail or from some other source. *Inmates of Milwaukee County Jail v. Petersen*, 353 F.Supp. 1157, 1169 (ED Wis., 1973). There is no question but that publications which are obscene under standards enunciated by

the Supreme Court need not be allowed to inmates. However, publications which are not obscene are constitutionally protected, and in cases of doubt the prohibition against prior restraints forbids defendants from curtailing a pretrial detainee's right to receive publications.

For these reasons, defendants shall allow pretrial detainees to receive publications which are available to the public generally and shall not limit such to publications which are received directly from publishers only.

 As was noted in the Court's findings of fact, proper security procedures require that defendants be allowed to inspect for contraband any article before such is delivered to the inmate.

 22. Opening inmate non-legal mail to inspect such for contraband without any censorship of the mail does not offend the First Amendment's guarantee of freedom of speech and is justified on the basis of the security objectives that inspection advances. See *Procunier v. Martinez*, 416 U.S. 396, 413–414, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Fore v. Godwin*, 407 F.Supp. 1145, 1146 (ED Va., 1976). The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment. *Jones v. North Carolina Prisoners' Labor Union Inc.*, —— U.S. ——, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

 23. The fundamental right of access to the courts requires that jail authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Likewise, indigent inmates must be provided with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. *Bounds v. Smith, supra.*

 The library as proposed by defendants and as ordered in the grant of partial summary judgment is not adequate. The

proposed library would contain nothing to assist prisoners in preparing legal papers to challenge the conditions of their confinement under the civil rights laws of the United States or by federal habeas corpus. Accordingly, the defendants shall purchase the volumes of the United States Code which contain titles 18, 28, and 42, including annotations thereto, and shall within thirty days of this Memorandum Opinion and Order select a manual on prisoners' civil rights to be ordered and shall report on such to the Court.

Defendants shall also provide all indigent inmates with any necessary paper, pens, envelopes, stamps, and notarial services to assist inmates in the preparation of legal papers. Indigency shall be defined in the same manner as it has been previously defined in regards to the grant of two free letters per week, namely, an inmate whose commissary account has an average two-week balance of under two dollars ($2.00) or who has been incarcerated in the Saginaw County Jail for less than two weeks and is without funds to purchase the necessary items.

■ Defendants shall immediately designate a room for legal research and shall allow all inmates reasonable access to the same and greater access where an inmate has a correspondingly greater need.

■ 24. Nothing in the Constitution of the United States requires that defendants establish a grievance procedure. Such, however, would certainly be desirable as it increases communication between inmates and jail authorities and would allow an opportunity for differences to be reconciled prior to resort to the courts.

■ 25. Solitary confinement and the isolation of prisoners who are a threat to themselves or to the safety and security of others are not in and of themselves cruel and unusual punishment nor a denial of due process. Rather, the issue is whether such is required for safety or security reasons, and prisoners may not be subjected to adverse living conditions which are not required by the considerations of safety and security. *Bay County Jail Inmates v. Bay County Board of Commissioners, supra,* pp. 16–17.

■ There has been no evidence that prisoners are placed in the incorrigible cells for punishment or that the basic needs of any prisoner have not been provided for under the present procedures and practices. Accordingly, the Court finds no constitutional violation in the use of the incorrigible cell, provided that no persons who have identifiable suicidal tendencies are placed in such a cell without a guard in attendance at all times.

■ However, placement of an inmate in an incorrigible cell is punitive, regardless of the safety or security reasons which may necessitate such a placement. For this reason, placement of inmates requires a modicum of due process, and the burden is on the jail authorities to establish that such treatment is justified. *Taylor v. Clement,* D.C., 433 F.Supp. 585 (1977). The very emergency nature of the situation, however, will generally preclude the use of the procedures designated for discipline, and the fact that an inmate does not remain in an incorrigible cell for more than 24 hours allows little opportunity for a hearing procedure subsequent to placement in an incorrigible cell.

Rather than attempting to determine the procedure to be followed at this time, the Court will defer initially to defendants and allow them 30 days to submit a proposal on this issue to the Court.

Nothing herein is meant to suggest that defendants may use the incorrigible cells for punishment purposes or that such is prohibited. This issue is not before the Court. The Court has previously ordered, however, that certain procedures be followed in all cases where discipline is imposed.

■ 26. When a Court of the United States finds numerous constitutional violations in the operation of a detention facility which have been conceded by defendants, the Court has the duty and obligation to fashion effective relief and is allowed wide

discretion. *Gates v. Collier*, 501 F.2d 1291, 1320 (CA 5, 1974); *Alberti v. Sheriff of Harris County*, 406 F.Supp. 649, 668 (SD Tex., 1975).

 Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies. *Swann v. Charlotte-Mecklenburg*, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

27. The total environmental picture of the Saginaw County Jail is sufficiently harsh to justify the conclusion that inmates confined there have been subject to cruel and unusual punishment and to a deprivation of due process under the Fourteenth Amendment of the Constitution of the United States.

### RELIEF

As the Court has required defendants to submit proposals and reports on various issues within thirty days of this Order, this Order is an interim decree and a final judgment shall not yet be entered. However, the terms of this order shall take effect immediately, and defendants are hereby ordered to do all actions required hereby and are hereby enjoined from doing any action prohibited hereby until a final judgment is entered or until further order of the Court.

Defendants shall forthwith post two copies of this Memorandum Opinion and Order in a plainly visible manner within each cellblock of the Saginaw County Jail and shall file proof of such service with the Court.

IT IS SO ORDERED.